[Crim. No. 1889.  In Bank.—February 17, 1915.]

## THE PEOPLE, Respondent, v. NAT WESTON, Appellant.

CRIMINAL LAW—MURDER—APPEAL FROM JUDGMENT—EVIDENCE.—On an appeal from a judgment convicting the appellant of murder in the first degree, the evidence, notwithstanding the absence of eye witnesses, is held to be of such a character as to leave no doubt of the guilt of the defendant.

ID.—DEPOSITION TAKEN AT PRELIMINARY EXAMINATION—WANT OF DUE DILIGENCE TO FIND WITNESS—IMMATERIAL ERROR IN ADMITTING DEPOSITION.—In the absence of evidence that a witness could not with due diligence be found within the state, the reading of his deposition taken upon the preliminary examination of the defendant, at which counsel representing the defendant was present and cross-examined the witness, will not warrant a reversal of the judgment of conviction, in view of the provisions of section 4½ of article VI of the constitution, where the evidence of the witness was of such slight importance, under the circumstances of the case, that it could not have affected the verdict, and the other evidence so clearly established the defendant's guilt as to satisfy the court that a different verdict would not have been reached had the deposition not been admitted.

ID.—EVIDENCE OF MOTIVE—RELATIONSHIP BETWEEN DECEASED AND WITNESS OF DEFENDANT.—On a prosecution for murder, evidence is admissible on the question of motive, which, taken in connection with other evidence in the cause, fairly tended to show that the defendant believed that a certain woman, who was living with him as his mistress, was being estranged from him by the deceased, and that he would ultimately be deprived of her society and companionship, and that he greatly resented this and was determined to prevent it if possible.

ID.—STATEMENTS BY DEFENDANT WHILE IN CUSTODY NOT AMOUNTING TO CONFESSION.—Statements made by the defendant while in custody to a police officer, which were not in the nature of a confession or acknowledgment of guilt, but which merely tended to establish an *alibi* or to explain or contradict certain incriminating circumstances or the testimony of different witnesses as to his whereabouts on the day of the homicide, are admissible in evidence, without a showing that they were freely and voluntarily made, without improper inducement.

ID.—INSTRUCTIONS AS TO MOTIVE.—An instruction as to motive is correct if it substantially states that while proof of motive is always admissible it is never indispensable, and that if the jury were satisfied beyond all reasonable doubt that the defendant was guilty, they might find him guilty without finding what the motive of the killing

was. There is no inconsistence between such instruction and one in which the court declared "that where the identity of the defendant as the person who committed the crime is a fact in dispute, evidence of the motive of the defendant to commit the crime is material."

Id.—Erroneous Instruction Given at Defendant's Request.—The defendant in a criminal prosecution cannot complain of an erroneous instruction given at his own request.

Id.—Mental Condition of Defendant Preceding Homicide.—In a prosecution for murder evidence is admissible to the effect that the defendant was apparently in a state of some "mental excitement" just prior to the homicide.

Id.—Evidence as to Finding of Revolver.—In such prosecution, evidence is admissible that a certain revolver, containing one exploded and five loaded shells, and carrying the same caliber bullet as that with which the deceased was shot, was found in a woodshed back of a particular house, where there was further evidence that for some time before and immediately after the homicide the defendant was at such house, and that he had opportunity of access to the shed after the homicide.

APPEAL from a judgment of the Superior Court of Alameda County and from an order refusing a new trial. Bradley V. Sargent, Judge presiding.

The facts are stated in the opinion of the court.

L. Sledge, and O. Hudson, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

ANGELLOTTI, C. J.—The defendant was convicted of murder in the first degree, and appeals from the judgment pronounced on such conviction and from an order denying his motion for a new trial.

1. It is suggested that the evidence implicating defendant as the person who shot and killed the deceased, one Jerry Logan, is so uncertain as to leave the verdict without sufficient support. While no one actually witnessed the occurrence, the evidence was of such a character as, in our opinion, to leave no doubt of the guilt of the defendant.

2. Upon the trial the depositions of Alice Logan, the widow of deceased, and one N. H. Brown, taken upon the preliminary examination of defendant, were read in evidence, said

witnesses not being present. It was claimed in the trial court and is claimed here that it was not satisfactorily shown that these witnesses could not with due diligence be found within the state (no claim being made by the people that either was dead or insane), and that therefore it was error to allow their depositions to be read in evidence. (Pen. Code, sec. 686, subd. 3.) Defendant's claim is not seriously pressed here as to the witness Alice Logan, as to whom the evidence shows satisfactorily enough to sustain the conclusion of the trial court that she could not with due diligence be found in the state, and that very shortly after the death of her husband she left the state to go to New Orleans. As to the witness Brown the showing was not quite as satisfactory, as the evidence disclosed that the deputy sheriff seeking the witnesses, although informed that Brown had gone to "Scotia," had failed to follow up that information with any attempt to reach such witness at Scotia in Humboldt County in this state. Whether this was the place to which Brown had gone does not appear, but in view of the information, reasonable diligence might well be held to have required that an effort should be made to find him at the place of that name in this state.

But the testimony of Brown was, under the circumstances of this case, of very little importance, and we do not see how it could have affected the verdict. The witness did not know the defendant, and had never seen him, so far as he knew, until he saw him in the city prison after his arrest. He was on the street a short distance from Logan's home, at the time of the shooting, about 8 o'clock P. M., heard the shot, and just thereafter saw a man running very fast from Logan's place west on Eighth Street toward Pine, and then across a field toward the Southern Pacific tracks. He stated quite positively that he could not say that defendant was this man. He could not say what kind of a hat the man wore, soft or stiff, but thought it was a stiff hat, while all the other evidence showed that defendant did not have such a hat that day. He did, however, say that the man he saw had light clothes, and that "in height and build and general appearance" he resembled the defendant. Such testimony of identification on the part of one observing a stranger to him running very fast along a street in the dusk of the evening, is of very slight importance, and it is hardly conceivable that, under the circumstances of this case, it could have influenced the jury in

arriving at a verdict. Entirely regardless of this testimony, the evidence as a whole pointed so clearly to the defendant as the guilty party, that we are satisfied that the verdict would not have been other than it was, had the deposition not been admitted. Therefore, even if error was committed in receiving it, its admission should not be held to be ground for reversal, especially in view of the provisions of section 4½ of article VI of the constitution. It is worthy of note that defendant was represented when Brown testified at the preliminary examination, by Mr. Sledge, who was one of his attorneys at the trial, and that Mr. Sledge cross-examined the witness at that time.

3. Certain evidence given by Nettie Dykes, Frank Dykes, and Sarah French as to the relations existing between defendant and Sarah French and as to certain quarrels between them, was all admissible, in our opinion, on the question of motive. All of this evidence, taken in connection with other evidence in the cause, fairly tended to show that defendant believed that Sarah French, who was living with him as his mistress, was being estranged from him by deceased, and that he would ultimately be deprived of her society and companionship, and that he greatly resented this and was determined to prevent it, if possible. It cannot be fairly held, in view of the record, that it does not appear that the defendant believed that deceased was the person who was becoming a successful rival for the affection and society of Sarah French. It is thoroughly settled, as said in *People* v. *Soeder,* 150 Cal. 15, [87 Pac. 1017], that "evidence having a direct tendency, in view of the surrounding circumstances, to prove motive on the part of a person for a crime, and thus to solve a doubt, 'either as to the identity of the slayer, the degree of the offense . . . ' is admissible against a defendant, however discreditably it may reflect on him, and even where it may show him guilty of other crimes." We do not think that the evidence as to these matters went into detail any further than was proper.

4. The trial court did not err in refusing to strike out certain testimony of W. J. Emigh, assistant inspector of police, as to certain statements made by defendant while in custody. Defendant never made any statement in the nature of a confession or acknowledgment of guilt. In all of his statements in the presence of Officer Emigh he denied having had any-

thing to do with the killing of deceased, and constantly insisted that he was not in Alameda County at all on the day the homicide was committed. His statements consisted of an attempt to account for all his movements on that day, all being in San Francisco, and of absolute denials of the statements of many witnesses both in Oakland and San Francisco as to his whereabouts and conduct on that day, and of denials as to any participation in the homicide. He did admit that a certain hat, which it had been testified had been left by him with one Neil in Oakland on that day, was his, but denied that he left it there, and attempted to account for its getting into Neil's possession by a statement to the effect that it must have been stolen from him. Such statements do not constitute confessions, and the law does not require a showing that they were freely and voluntarily made, without improper inducement, in order to entitle them to be admitted in evidence. There was, however, explicit testimony to the effect that at none of the conversations did any one hold out to defendant any hope of reward or immunity from punishment as an inducement for any statement, and that no force, threat, duress, menace, or coercion was used to induce or compel defendant to make a statement, and that all he said was freely and voluntarily said.

5. We find no error in the instructions of the trial court as to motive. The general instruction as to motive given by the court on this subject correctly stated substantially that while proof of motive is always admissible, it is never indispensable, and that if the jury were satisfied beyond all reasonable doubt that defendant was guilty, they might find him guilty without finding what the motive of the killing was. The essential thing is that the jury should be satisfied beyond all reasonable doubt that the defendant committed the crime charged against him, and if so satisfied, it is immaterial what the motive is. The presence or absence of a particular motive is only a circumstance to be considered by the jury in connection with other circumstances in the case, in determining whether the defendant is guilty. This is all the instruction given by the court could be fairly understood to mean. At the request of the defendant made at the conclusion of the charge, the court further instructed the jury that ''where the identity of the defendant as the person who committed the crime is a fact in dispute, evidence of the motive of the defendant to commit

the crime is material.'' This instruction was not at all inconsistent with what the court had previously said on the question of motive. It did not intimate that proof of motive was indispensable. It was simply an instruction as to evidence, specifically pointing out that evidence tending to show motive is material in a case of this character. The court had said substantially the same thing in its general instruction on the subject. The statement was correct. It is urged that the court erred in giving this instruction, but even if it had done so, defendant could not complain here of an instruction given at his own request.

6. There was no error in admitting evidence to the effect that the defendant was apparently in a state of some ''mental excitement'' just prior to the homicide. However, the testimony on this subject was unimportant in character, and could not have affected the verdict one way or the other.

7. There was no error in admitting the evidence as to the revolver found on May 10th in the woodshed back of Neil's house. This shed was on the lot occupied by Neil. There was evidence to the effect that defendant was at Neil's house for some time before and immediately after the homicide, and that he had opportunity of access to this shed after the homicide. When found, the revolver contained one exploded shell and five loaded shells. It carried the same caliber bullet as that with which deceased was shot. All this was material and competent evidence. The objections made by defendant to all this evidence went rather to its weight than to its admissibility.

No other point for reversal is made in defendant's brief. We have carefully examined the record on appeal, and find no reason to doubt that defendant had a fair and impartial trial or that he was properly convicted.

The judgment and order denying a new trial are affirmed.

Shaw, J., Lawlor, J., Sloss, J., Melvin, J., Lorigan, J., and Henshaw, J., concurred,