[Crim. No. 803. Second Appellate District, Division Two.—December 14, 1921.]

THE PEOPLE, Respondent, v. JAMES ELDER, Appellant.

[1] CRIMINAL LAW—ADMISSION—CONFESSION.—An admission is distinguished from a confession by the fact that the term "admission" in criminal matters relates to matters of fact that do not involve a criminal intent, and a confession is an acknowledgment of guilt.

[2] ID.—STATEMENT OF GUILTY CONDUCT—JUSTIFICATION—ADMISSION. When the statement of guilty conduct is such that it does not involve a criminal intent, or where it constitutes facts amounting to justification or excuse for the defendant's acts, it is an admission rather than a confession.

[3] ID.—CONFESSION — VOLUNTARY CHARACTER — INSTRUCTION. — While primarily it is for the court to decide whether a confession was voluntarily made for the purpose of determining its admissibility, the jury should be instructed that it is still within its province to pass upon the matter.

[4] ID.—MURDER—EVIDENCE—INSTRUCTIONS—ABSENCE OF ERROR.—In this prosecution of a husband for the murder of his wife, no error

was committed in the admission in evidence of the statement of the defendant concerning the crime, or in the admission of other testimony, or in the instructions to the jury.      .

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Paul J. McCormick, Judge.   Affirmed.

The facts are stated in the opinion of the court.

J. J. McMahon, Fred J. Spring and C. W. Byrer for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attoney-General, for Respondent.

CRAIG, J.—This is an appeal taken from the judgment and sentence of life imprisonment based upon the jury's verdict and from an order denying a motion for a new trial. The motion was made upon all of the statutory grounds. The defendant was convicted of murder in the first degree; he having been found guilty of the homicide of his wife. It appears without conflict that on the twenty-second day of September, 1920, he shot her with a 32-caliber revolver. She died twelve days later as a result of the wounds thus inflicted.   The defendant saw his wife and one Clemmons standing under a tree in front of his residence.   Defendant walked up to them and said, "Well, Ida, this is the Christian life you are leading."   Mrs. Elder exclaimed, "My God! Jim Elder, my husband."   Defendant stepped back and fired at least two shots from his revolver.   Ida M. Elder, the deceased, received two bullets.   Upon the trial, these facts were not disputed by the defendant but he claimed that before he shot, Clemmons had reached toward his pocket and that the homicide was the result of the defendant's effort to lawfully defend himself and the accidental shooting of Mrs. Elder by reason of her having suddenly come forward as the shots were being fired.   The jury, by its verdict, found against these contentions.   The entire circumstances surrounding the homicide were before them, and without here detailing them it is sufficient to say that the record shows that there was ample evidence contradicting

the defendant's version of the shooting to sustain the verdict of the jury.

The principal contention of the appellant has to do with the admission of an alleged confession and instructions refused by the court on that subject.

The people insist that the evidence admitted of what the defendant is alleged to have said, and which appellants aver amounts to a confession, was, in fact, only an admission. In this, we think, they are mistaken. [1] "An admission is distinguished from a confession by the fact that the term 'admission,' in criminal matters, relates to matters of fact that do not involve a criminal intent, and a confession is an acknowledgment of guilt." (Wharton's Criminal Evidence, sec. 622a.)

Appellant does not indicate what part of the statement attributed to the defendant as a confession is regarded as objectionable; however, the salient points of it as related by Officer Taylor are: "Well, it is a long story. We have been married over twenty years. In Pennsylvania I had lots of trouble with my wife. We had separated there and I had divided up my property with her and gave her half of what I had." Defendant is alleged to have said further that his wife was continually nagging at him and about five weeks prior to September 22d, she had left him and was running around with married men; that on the night of the shooting he saw her come out of the house and start talking to Clemmons. They were standing in the parking under a tree. He, Elder, went toward them and when he got to them his wife turned around and shouted "Murder!" Taylor testified: "He said he lost his head and complete control of himself and so I asked him how many times he shot at her and he said he thought twice. . . . He said he was very sorry for what had happened and hoped his wife would get well."

Some other but immaterial statements were contained in Taylor's version of the confession but nothing is alleged to have been said by Elder that could be regarded as in the slightest degree a justification or excuse. This statement is an admission of guilty conduct which involves criminal intent. If the defendant had made this statement as a witness at the trial, no other evidence would have been necessary to have sustained the verdict which the jury re-

turned. The specific intent to kill would have been presumed from the guilty conduct admitted by him. *People* v. *Fowler,* 178 Cal. 665 [174 Pac. 892], cited by respondent, is not in point. There the defendant expressly negatived the idea that his conduct was accompanied by a criminal intent by declaring that he had acted in self-defense and by a further statement of facts which, if true, would have supported that plea. **[2]** When the statement of guilty conduct is such that it does not involve a criminal intent, or where it constitutes facts amounting to justification or excuse for the defendant's acts, it is an admission rather than a confession. Such are the following cases cited by respondent: *People* v. *Weston,* 169 Cal. 393 [146 Pac. 871]; *People* v. *Fowler,* 178 Cal. 657 [174 Pac. 892]; *People* v. *Wilkins,* 158 Cal. 530 [111 Pac. 612]; *People* v. *Le Roy,* 65 Cal. 613 [4 Pac. 649].

However, the usual formal foundation was laid for the admission of the confession. Officer Taylor was the witness who related it. Before doing so he stated that it was given freely and voluntarily, without any promise of immunity or hope of reward having been offered or any violence having been used upon the defendant to induce him to make a statement. But appellant insists that Elder was in such a condition when he made the confession and had been so mistreated before then that what he said cannot be regarded as having been uttered freely and voluntarily.

The greater part of the occurrences which appellant claims transpired had not been testified to by any witness when the objections to the confession were overruled by the court and the confession admitted in evidence. It was the right of counsel to have offered evidence by calling the defendant or other witnesses to show that he had been coerced or was otherwise unable to make a voluntary or dependable statement, but no request was made to do this. The court could only rule upon defendant's objection in the light of the evidence as then contained in the record. The confession was said to have been made at about 11 o'clock on the 23d of September. The only violence which defendant had received as related by any witness who had testified was on the evening of the 22d of September, at about 8 o'clock P. M. This happened at the time the officers arrested him.

Officer Taylor testified that defendant resisted arrest and that in the fight which occurred in subduing him, Elder had received a number of bruises and wounds, and had lost his glasses. Dr. Schiffbauer, the assistant police surgeon, had testified that at about 8 o'clock on the 22d of September he had dressed appellant's wounds; that the nose was broken and there were three or four superficial scalp wounds. Both this witness and Officer Taylor had declared that Elder was not dazed. Officer Taylor had testified that before making the statement contained in the confession defendant had been taken to the receiving hospital three times to see his wife; that he had walked unassisted; that on these trips he made no statements but did not say that he· did not want to talk. In this state of the record we think the court properly overruled the objection to the question in response to which the confession was related. But if the evidence justified the conclusion that the defendant was not in full possession of his faculties when he made the statement in question, this did not result in its being inadmissible but would be a matter to be considered by the jury in connection with their duty to weigh the evidence. (*People* v. *Miller*, 135 Cal. 69 [67 Pac. 12].)

The defendant requested the following instruction: "In this case the prosecution was allowed to introduce as testimony in the case certain alleged statements of the defendant which the prosecution claims to be a confession of guilt on the part of the defendant. Before permitting this testimony to be introduced, the court required preliminary proof to establish the fact that such alleged statement or confession on the part of the defendant was voluntary, and was not made under threats or violence or because of promises or other improper inducements. The defendant has offered testimony to establish the fact that such alleged statement or confession was not voluntary, and was therefore not admissible as testimony in this case.

"You are instructed that the action on the part of the court in admitting such alleged statement or confession into evidence does not bind you to accept the court's conclusion, and that the question as to whether such alleged confession or statement, if made, was voluntary or not is for you to decide. If you conclude that it was not made voluntarily,·

then you have the right to, and it is your duty to, disregard the same altogether. In other words, you have the right to reconsider the question as to whether the same was voluntary or not; and in this connection, are the judges of the value and effect of evidence, and of the credibility of the witnesses, as the same pertains to such alleged statement or alleged confession." This the court refused to give. Undoubtedly the offered instruction contains a correct statement of the law to the effect that if there is a substantial conflict in the evidence the jury may reconsider the question as to whether or not the confession was voluntarily made. [3] That matter is primarily for the court, for the purpose of determining the admissibility of the statement. Nevertheless, the jury should be instructed that it is still within its province to pass upon the matter and finally decide as to whether or not the confession was voluntarily made. (*People* v. *Fowler*, 178 Cal. 657 [174 Pac. 892].) The defendant's version of the treatment he had received did not show that any statement he made to Officer Taylor at 11 o'clock on the 23d of September was other than a voluntary one. He claimed that he did not remember making the statement related by Taylor. Defendant testified that he was throwing cold water on his head to ease the pain and an officer told him not to do that; that Officer Taylor and the witness got to talking and that "Mr. Taylor said to me, 'I am your friend, Jim,' and we got to talking about my home, and I was inferring about leaving the room unlocked, and that is about all the conversation that I can recall." It is true that defendant alleged that on the night of the 22d and the one previous to the day he is said to have made the confession, he had been struck by officers; this he said happened first in the fight with Officer Johnson when the arrest was made; again he said other officers struck him in the jaw at the jail; he was taken to the hospital where his wife was, but he does not say that he objected to going; he asserts that he was cross-examined before being taken to the hospital the first time. Further than this he does not claim that he was cross-examined nor that his talk with Officer Taylor was forced or involuntary. The record does not support appellant's assertion that defendant had been "constantly surrounded" by officers. It appears that he had been left alone from about 2 o'clock of the 22d to shortly before 11 o'clock of

the following day. Nor does the record show that "the sweating process was renewed the next morning." According to defendant he had received superficial scalp wounds and a broken nose; there is no evidence to indicate that he was not mentally clear or that any confession he may have made was in any way induced by the rough treatment received the night before. In the instant case, therefore, we cannot say that the defendant was prejudiced by the failure of the court to inform the jury that it might pass upon the question as to whether or not the confession was voluntarily made.

It will not be necessary to consider another instruction offered as defendant's number XVII, which was modified so as to strike out a sentence which involves the same principle of law as the one we have last discussed.

A further instruction offered by the defendant was also refused. It reads: "Testimony has been introduced in this case as to certain statements made by Ida Elder in the presence of the defendant, while at the receiving hospital after the shooting occurred. You are instructed that such statements are not in themselves evidence of any fact narrated in such statement, and are admissible only for the purpose of showing that the defendant acquiesced in such statement either by express assent, or by silence, or by such conduct as fairly implied assent." The witness Officer Taylor testified that the defendant was brought into the room at the receiving hospital where his wife was lying on a cot, and in answer to question that she there stated among other things in the presence of Elder, "He is my husband, James Elder. He shot me as I fell down," and "I do not remember anything else." "He wanted me to sign a quitclaim deed to some property and I did not want to do it and did not"; and that Elder made no response. The instruction in question was an accurate and true statement of the law as applied to the circumstances in this part of the instant case. (*People* v. *Mallon,* 103 Cal. 513 [37 Pac. 512].) This error would require reversal if the refusal to give the instruction could reasonably be regarded as having affected the substantial rights of the defendant. Appellant insists that the reference to Mrs. Elder's refusal to sign the deed provided a motive otherwise lacking in the people's case, but proof of motive is not essential to a conviction. (*People* v. *Wes-*

*ton,* 169 Cal. 393 [146 Pac. 871].)    Again, no stronger motive could be required than that which might be inferred from the circumstances, established without contradiction, of the defendant finding his wife in company with Clemmons. With proper regard to the provisions of section 4½ of article VI of the constitution, the error here under consideration does not warrant this court in ordering a reversal.

The court gave the following instruction: "The law does not recognize the plea of irresistible impulse as a defense to crime, but responsibility depends upon the question whether or not the accused was conscious of and knew the nature of the act committed, at the time of its commission and whether it was wrong, and if he did thus know and appreciate the nature of the act committed, at the time of its commission and whether it was wrong, and if he did thus know and appreciate the nature of his act, then he did the act at his peril, and the plea of irresistible impulse will not avail him." It is not claimed that the law is otherwise than as stated, but the ground upon which it is urged that error was committed in giving it, is, that the defendant did not plead or offer testimony to establish that he did the shooting under the influence of an irresistible impulse. Referring to defendant's version of what took place at the shooting, one witness, referring to Elder, testified, "He said he lost his head and lost complete control of himself." We think this was sufficient to justify the giving of the instruction concerning which complaint is made. It is not material that this testimony was given by a witness called by the people. Unless informed as to the law the jury may have concluded that the defendant, if unable to control himself, should not be held legally responsible. The instruction does not assert or assume that the defendant had attempted to base a claim of innocence upon the proposition that he had been compelled to shoot by an irresistible impulse. It merely states an abstract principle of law which, as such, is clearly correct.

[4]  We now proceed to the assignment of error in regard to the testimony of the witness Dr. A. F. Wagner. It is the contention of appellant that the memorandum made by the doctor at the time of the performance by him of an autopsy upon the body of Ida M. Elder was read to the jury. However, the record fails to substantiate this claim,

but instead indicates that the notes were used merely to refresh the memory of the witness. The question which called for the answer embodying the testimony to which objection is made was, "Q. State to the jury, refreshing your memory from your notes, if you desire to do so, the findings of your autopsy."

The motion for a new trial was based upon the ground of newly discovered evidence. That which it is said was discovered after the trial is the alleged fact Clemmons, the man who was with Mrs. Elder at the time of the homicide, received one of the bullets. Clemmons was a witness at the trial. He was called by the people and cross-examined at length by defendant's counsel. Ample opportunity was afforded defendant to have learned that Clemmons was shot. The record does not show that any question was asked in response to which he should have stated that fact. No attempt is made to point out such a question or to call our attention to evidence by which defendant may have been misled or given the idea that the witness was not shot. He did testify that he was shot two or three times. No questions were asked as to what the third shot struck or in which direction it was fired. Under these circumstances we cannot say that the trial court erred in refusing the motion for a new trial. This is a matter which is always largely in its discretion. (*People* v. *Sullivan,* 3 Cal. App. 502 [86 Pac. 834].)

The last ground relied upon for reversal is that the verdict was not supported by the evidence. ·If the witness Clemmons' version of the tragedy was believed by the jury there can be no doubt but that the evidence was ample to support the verdict. He testified in substance that while Mrs. Elder and the witness were standing about four feet apart on the sidewalk the defendant, without the slightest warning, appeared and fired two or three shots, the first one of which struck the deceased. As she fell she said, "Why, Jim Elder." These were the only words spoken. "It was like rain from a clear sky."

Of course, the defendant gave evidence, contradicted, however, by Clemmons, which, if believed, would show that he shot in self-defense, but it needs no citation of authority

to establish that where the testimony is conflicting the verdict of the jury will not be disturbed.

The judgment and order are affirmed.

Finlayson, P. J., and Works, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 13, 1922, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 9, 1922.

All the Justices concurred.

Lennon, J., was absent and Richards, J., *pro tem.*, was acting.