[Crim. No. 3195. In Bank.—October 22, 1929.]

THE PEOPLE, Respondent, v. LEO P. KELLEY, Appellant.

S. S. Hahn, Dan Heyfron and Orfa J. Shontz for Appellant.

U. S. Webb, Attorney-General, John L. Flynn, Deputy Attorney-General, Asa Keyes and Buron Fitts, District Attorneys, and Tracy Chatfield Becker, Deputy District Attorney, for Respondent.

WASTE, C. J.—The defendant was indicted for the murder of Mrs. Myrtle Mellus. The jury returned a verdict of murder of the first degree, without recommendation. The court below denied a motion for a new trial, and pronounced sentence and judgment imposing the death penalty, whereupon the defendant appealed from the judgment of conviction and from the order denying him a new trial.

The decedent, a married woman, forty-three years old at the time of her death, although residing with her husband, had maintained illicit intimacy with the appellant, much younger, for a period of four or five years. The appellant was often seen in company with the woman, and was a frequent visitor at her home when her husband was away, and on those occasions they indulged freely in intoxicating liquor and in sexual intercourse. Mrs. Mellus gave the appellant presents of clothing and personal effects, and assisted him in making his own purchases. On the morning of Sunday, August 5, 1928, the husband of the deceased left home at an early hour, leaving the decedent and a maid in the house. He intended to be gone the entire day. The appellant was summoned by telephone to the Mellus home by Mrs. Mellus shortly after the husband's departure, and arrived there about two hours later. He found Mrs Mellus partially dressed, and, according to his own testimony, the two spent the forenoon of the day drinking whisky and indulging in sexual intercourse.

The woman's husband returned to his home about 5 or 5:30 o'clock in the afternoon. The doors of the house were locked or fastened on the inside, and he gained entrance through a window. On going upstairs, he found his wife lying on a bed, partially covered. Her body had been frightfully maltreated, and she was dead. Further dis-

cussion of the gruesome condition of the body is unnecessary, in view of the conclusions we have reached, in considering the appeal. Police officers, making a search of the house, found the appellant hiding in a closet. IIis face and body were scratched, and there was blood on the shirt he was wearing. Blood was also found under his finger-nails. When asked "why he so brutally attacked her (the deceased)," he said he loved her too much to kill her, but finally admitted that "he mussed her up a bit." Beyond that, he made but few answers when closely questioned by the arresting officers as to what had occurred. When taken to the police station, he gave other details as to what he said had occurred during the day, but strenuously denied intentionally so injuring the decedent as to cause her death.

█ It is first contended by the appellant that there is no evidence to sustain the verdict of murder in the first degree, for it raises only a suspicion of guilt, and fails to show any motive for the crime. The record of the trial in the court below is contained in a transcript of nearly two thousand pages, from which it irresistibly appears that the appellant, and none other, inflicted the injuries on the woman which caused her death. No jury, in our opinion, would ever find otherwise. The evidence of the defendant, that of the witnesses called in his behalf, and the circumstances of the killing relied on by him fail to remove the absolute conviction, established by the entire record, that Kelley inflicted the fatal injuries on Mrs. Mellus during a sexual debauch in which the decedent was a willing participant, and while the passions of both were probably more or less inflamed by the use of intoxicating drink. We are, at the outset of our consideration, therefore, satisfied that on the facts of the case the verdict of the jury was just, in so far as it found the defendant guilty of causing the death of Mrs. Mellus, and that from that point of view, no miscarriage of justice resulted.

The conclusion we have reached on the point just discussed disposes, also, of the further contention of the defense that the evidence is insufficient to sustain the conviction because of the absence of proof of a motive. █ The presence or absence of a motive is only a circumstance to be considered by the jury in connection with the other circumstances in the case. (*People* v. *Weston,* 169 Cal. 393,

397 [146 Pac. 871].) It is essentially a question of fact, and, like every other fact, is not necessary to be proved, if the crime can otherwise be established by sufficient competent evidence. The absence of proof of motive is a fact to be reckoned on the side of innocence; but, if the proof of guilt is, nevertheless, sufficient to overcome the presumption of innocence, the appellant must stand convicted notwithstanding no motive has been shown. (*People v. Tom Woo,* 181 Cal. 315, 328 [184 Pac. 389].) The proof in this cause, that appellant inflicted the injuries that · caused the death of the decedent is so strong and convincing that any benefit the appellant could seek to allocate to himself by reason of the absence of a motive is entirely swept aside in so far as it might be claimed that he did not inflict the fatal injuries on the woman.

But another phase of the conviction of the appellant presents itself on this appeal, on which the absence of a motive has a bearing. On re-argument the prosecution and the defense were asked to discuss the following question (among others) : "In view of the absence of a motive, which is a circumstance in favor of the defendant, is the evidence sufficient to support a verdict of murder in the first degree, carrying the death penalty? Should the verdict of guilty have been of any greater degree than manslaughter?" But for a vital change recently made in the law relating to criminal causes in this state, this query would not have been propounded. (*People* v. *Durrant,* 116 Cal. 179 [48 Pac. 75]; *People* v. *Peete,* 54 Cal. App. 333 [202 Pac. 51]; *People* v. *Weston,* 169 Cal. 393 [146 Pac. 871]; *People* v. *Tom Woo,* 181 Cal. 315 [184 Pac. 389].) Section 1181 of the Penal Code, as amended in 1927 (Stats. 1927, p. 1037), which must now be considered for the first time by this court, provides that if the evidence (in criminal causes) shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof or of a lesser crime included therein, the trial court may modify the judgment accordingly without granting or ordering a new trial, and this power shall extend to any court to which the cause may be appealed. The meaning and purpose of the amendment are so clear that we need not consume time in discussing the reason for its passage, beyond saying that its application to many crim-

inal prosecutions will prevent reversals and new trials. The section was amended after the decision in the case of *People* v. *Nagy*, 199 Cal. 235 [248 Pac. 906], in which this court was compelled to reverse the cause for an entire new trial when there was ample evidence that the accused committed arson of the second degree, but not of the first degree, as found by the jury.

The contention that there is no evidence to establish the charge set forth in the indictment presents a question of law, but, on appeal, the court having jurisdiction is no longer confronted with the necessity of reversing a judgment of conviction if it sustains the contention. If it finds the evidence insufficient to justify the conviction for the crime alleged in the indictment, but sufficient to justify the conviction of a lesser degree of the crime or of some lesser and included crime, it need not set aside the verdict entirely, but may direct a modification of the judgment without ordering a new trial, and remand the cause to the trial court for the sole purpose of enabling that court to prescribe the proper penalty in punishment for the crime the appellate court finds to have been committed.

The prosecution concedes that to be the effect of the new law; but its answer to the question propounded for reargument was that, as the present amendment to the statute imposed a new duty upon the court, the prosecution declined to "express an opinion" as to what the court should do. We have approached the consideration of this new duty with a great deal of hesitation, not only because the duty is one not to be assumed lightly, but also because the amendment to the code section marks a complete departure in our criminal jurisprudence, and one which on first impression seems a startling innovation in our procedure. It is a matter of regret that a case of such shocking details should be the first one in which the provision of the new law should be invoked; but we are convinced that, but for the miserable circumstances under which the crime was committed, and which no doubt outraged the moral sense of the people of the community in which it was committed, including the jurors, a verdict of murder would not, in all probability, have been rendered. It is in just such a case that the provisions of the new law may well be invoked.

■ That a crime was committed, and that the appellant committed it, are firmly established by this record. We have therefore concerned ourselves with the degree or the extent of the crime which was committed. The injuries inflicted on Mrs. Mellus, and from the effect of which she died, were disgusting, bestial and shocking. But there is nothing in the record from which it may with reason be argued that they were inflicted with that intent or that malice aforethought which is a necessary ingredient of the crime of murder. Nor can we bring ourselves to believe that there was a wilful, deliberate and premeditated killing. The prosecution, the defense, and all others connected with the cause are so familiar with the crime that an analysis of the evidence seems unnecessary. No express malice was shown, for there was not manifested a deliberate, or any, intention to unlawfully take the life of a fellow creature, and the circumstances attending the killing in this case, as proved, do not show an abandoned and malignant heart.

We have gone over the evidence in this case with minute care. The errors alleged to have occurred during the trial have not escaped our attention. Were we compelled, as formerly, to either affirm the judgment or reverse the case, we would be driven to the latter course because of prejudicial errors committed. ■ Appellant was properly found guilty, on competent evidence, of a most serious offense, and the errors complained of did not, in our judgment, prejudicially contribute toward bringing about the finding that he killed Mrs. Mellus. No miscarriage of justice, therefore, resulted, except that, as a matter of law, the jury improperly fixed the degree of the crime and imposed the penalty therefor. That injustice may now be righted without subjecting the state and the defendant to the delay and expense of a new trial.

The judgment of the lower court of murder of the first degree is modified. The cause is remanded to the trial court with directions to enter a judgment against the defendant finding him guilty of manslaughter, and to thereupon pronounce judgment upon him as prescribed by law.

Langdon, J., Preston, J., Richards, J., Seawell, J., and Curtis, J., concurred.