[Crim. No. 2861. First Dist., Div. Two. Jan. 14, 1953.]

THE PEOPLE, Respondent, v. SHERMAN MULLEN, Appellant.

Ernest J. Hill for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Leo J. Vander Lans, Deputy Attorney General, for Respondent.

DOOLING, J.—On this appeal the appellant is represented by counsel appointed by the court at his request. The appeal is from a judgment of conviction on two felony counts and from an order denying a new trial. Appellant was convicted of violating sections 4501 and 4502 Penal Code consisting of a malicious assault with a deadly weapon and possession of the deadly weapon, a knife, while a prisoner of the state undergoing a sentence of less than life. The case was tried before a jury after a plea of not guilty. The alleged errors sought to be corrected here involve the introduction of certain evidence and alleged misconduct of the prosecuting attorney. Appellant does not complain of the sufficiency of the evidence.

■ The first two assignments of error involve testimony advanced on the part of the prosecution which tended to prove homosexual tendencies between appellant and a fellow prisoner. This is claimed to be immaterial and also to be prejudicial as violating the rule preventing introduction of evidence of other unrelated crimes. It was the prosecution's theory throughout the case that defendant and his coprisoner, Caskey, were friendly, or at least that defendant desired such a friendship. This friendship of defendant for Caskey reached the point of unrequited love. The victim of defendant's assault, Hunsaker, was a friend of Caskey's and was obstructing the fulfillment of defendant's desires. This caused enmity in defendant toward Hunsaker, the motive for the stabbing being Hunsaker's interference with defendant's "love" for Caskey. The prosecution introduced this theory in the opening statement. The particular testimony objected to came from Caskey. He stated that he had met defendant in the Sacramento jail and again at San Quentin. He later met Hunsaker and became friendly with him. A number of conversations between Caskey and defendant were related wherein defendant had made homosexual advances toward Caskey and asked that the latter stop "running around" with Hunsaker, that three people were too many. Defendant also had told Caskey there was more than one way to end a friendship.

On the immateriality issue appellant's argument is that although motive may be a proper subject of proof in some cases, the evidence here involved does not, in fact, show a motive, but what appellant terms a "motive for the motive." Appellant conceives that the only motive in a situation such as this is antagonism or enmity existing between defendant and his victim. Therefore, it is claimed, the reason for the real motive, or its basis, the secondary emotion, cannot be shown. It would have been sufficient for the prosecution to show merely the desire on the part of defendant to break up the friendship existing between Caskey and Hunsaker. If this is sufficient then going farther is prejudicial. Appellant cites a case, *People* v. *Lane,* 100 Cal. 379 [34 P. 856], which indicates that motive can be shown to prove intention, and is the reason of that intention. It also states that any act of defendant may be admitted if it logically tends to prove some issue in the case, notwithstanding that it has an indirect bearing on an issue not in the case, except in unusual situations where that indirect bearing creates a danger which out-

weighs the importance of the evidence in tending to prove the ultimate issue.

The general situation here is that the ultimate issue is a malicious assault by defendant, the latter's identity as the assailant being crucial. Antagonism or enmity between defendant and the victim of the assault is admittedly relevant to the issue of defendant's identity as the assailant. Evidence of the interference of the assailed party with relationship between defendant and a third person, shown to have been desired by defendant, and known, from experience, to create passions of desire and of envy or jealousy is relevant to prove the motive of enmity. This is not a "motive for the motive" as appellant states, but the production of circumstantial evidence to show the motive. Those circumstantial facts are two, (1) defendant's affection for the third person; (2) the victim's interference with this affection. The only remaining problem is whether the affection in (1) can be proved by showing an abnormal sexual tendency in defendant. If the third person in this case had been a woman there is no doubt that the attraction of defendant for the third person would be relevant and admissible. This is so even if that relationship were an illicit one. Such was the holding in *People* v. *Santos,* 134 Cal.App. 736, 746 [26 P.2d 522] and *People* v. *Weston,* 169 Cal. 393, 396 [146 P. 871]. The latter case is squarely in point. Does the fact that the third person was a male and the attraction of defendant for him is abnormal make a difference? As far as the relevancy is concerned there is no logical difference.

With this out of the way the only question remaining is whether the abnormality of the relation was too highly prejudicial. In *People* v. *Hall,* 27 Cal.App.2d 440 [81 P.2d 248], a homicide case, where the plea was self-defense, it was held that motive is always material in such a case and any evidence having direct bearing on that motive is admissible however discreditably it may reflect upon defendant. In that case the decedent and defendant had been engaged in a homosexual relationship and this was the basis (not the motive itself) for the killing, the motive for which, properly speaking, was antagonism between the two parties growing out of their relationship. The court said. "(A)ppellant's voluntary declarations disclosing the prior immoral relationship not only served as competent evidence tending directly to prove motive and thus refute his claim of self defense, but that the matter of said immoral relationship

became an important factor in the case to be considered by the jury in determining . . . malice . . . and that being admissible for the purposes mentioned, the fact that such evidence reflected prejudically upon appellant's moral character did not, under the authorities cited, constitute legal grounds for its exclusion.'' The fact that the relationship in appellant's case does not go to an issue of self-defense, but instead to the issue of identity of the assailant would seem to be an immaterial difference.

As to appellant's second point on this same evidence, that it violates the rule forbidding evidence of other crimes, it is enough to say that no other crime was shown, but only a degenerate tendency or character. The rules in the above cited cases are sufficient to cover this point as well as the first.

The second general objection is that certain redirect examination of prosecution witness Inman went beyond the scope of cross-examination, and that that excessive evidence was not relevant. This witness was merely a witness to the assault and was not involved therein at all. The evidence complained of is similar to that above: it indicated a homosexual tendency in defendant, this time towards witness Inman. The theory for letting this in was that on cross-examination it had been advanced that this witness had had an argument with appellant and was not friendly toward him, and it was sought then to explain the nature of the argument and the unfriendliness. The court ruled ''He has testified he didn't like the defendant and that affected the value of his testimony so I will allow it for the purpose of ascertaining why he didn't like him.'' The result was that the prosecution was allowed to show why its own witness was biased.

■ Where cross-examination has shown bias or prejudice on the part of the witness he cannot be rehabilitated by showing his bias to be justified. The causes for his bias are not material to the issue at hand, i.e., whether his testimony is colored, for the bias is admitted. Wigmore recognizes this limitation (III Wigmore on Evidence, 3d ed., p. 511) and his view has been expressly followed in this state in *People v. Zemavasky,* 20 Cal.2d 56 [123 P.2d 478]. Appellant's case falls squarely within this rule, for the prosecution here did not try to show lack of bias, or less bias, but merely attempted to show that it was justified, thereby admitting the bias. However the error was not prejudicial. It had already been

properly testified to that appellant was a homosexual, and thus this evidence was nothing new.

 The next assignment of error is that two photographs supposed to depict appellant's cell after the assault were not admitted upon a proper foundation. One picture was identified as follows: ''Is that photograph, including the bars of the cell; the cot, the floor, and the blood on the floor in conformance exactly with what you saw on that day? The Witness: A. Yes.'' The identification of the other was similar. The trial judge has discretion in this matter and if there is any substantial evidence to support his ruling it will be upheld. (*People* v. *Bundte,* 87 Cal.App.2d 735 [197 P.2d 823].)

 The last assignment of error concerns alleged misconduct of the district attorney occurring in five places. The first two involve the evidence of homosexuality and are adequately dealt with above. The third relates to evidence offered of defendant's alleged consciousness of guilt. But no objection was made on the ground of misconduct but only to relevancy, and the appellant's signaling a prospective witness by placing his finger to his lips was relevant. The fourth was a statement of the motive for the assault made by the prosecutor in his argument. No objection was made to this either. Besides, it concerned properly admitted evidence. (*People* v. *Codina,* 30 Cal.2d 356 [181 P.2d 881]; *People* v. *Temple,* 102 Cal.App.2d 270 [227 P.2d 500].) Lastly, at argument the prosecutor showed the jury how the knife (introduced into evidence) fitted the hole in the victim's shirt (introduced into evidence). This is said to be new evidence and misconduct. No objection was made to this. It was merely explaining what was already in evidence.

Judgment and order affirmed.

Goodell, Acting P. J., and Jones, J. pro tem., concurred.