[Crim. No. 4246. Fourth Dist., Div. One. Mar. 16, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
HENRY CLAY DANIELS, Defendant and Appellant.

## COUNSEL

John L. Roche, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Howard J. Schwab, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**COUGHLIN, J.**—Defendant appeals his conviction on jury verdict of the offense of attempted murder of Eloise Daniels, his divorced wife, and Barbara Washington, the wife's companion.

On October 12, 1969, at 2:15 a.m., Mrs. Daniels, accompanied by her companion Mrs. Washington, was driving an automobile on a public highway when an explosion, centered in the vicinity of and underneath the driver's compartment, wrecked the automobile; ejected the occupants; and injured both of them, Mrs. Daniels losing both legs and her companion sustaining burns and cuts about the face, hands and legs.

Opinion evidence supports the conclusion the explosion was caused by a bomb made of dynamite, a blasting cap, current provided by batteries and a triggering device activated by a time mechanism to effect detonation.

On March 10, 1969, defendant, while a student at New Mexico State University, was in possession of a book entitled "Explosives and Homemade Bombs" authored by Major Joseph Stoffel. The book was indexed in the card catalogue of the university library; had not been checked out to anyone; but was missing. A maintenance employee of the university saw the book in defendant's dormitory room; noted the title; observed pieces of scrap paper used as book marks; and upon opening it at these places, noted at one of them a photograph of "an automobile engine with an explosive

attached to the upper side of it electrically" and at the other a photograph which "showed how to hook up an explosive with a mechanical device." An expert witness testified the "book would enable a grade school student to build a bomb with easily available material" and "not only has articles, but it has photographs, with diagrams that are self-explanatory, which use such things as mouse traps, clocks, all types of easily available materials to set off any type of device that will give an explosion."

On three different occasions before the explosion, defendant had assaulted his wife under circumstances supporting the conclusion he would kill her if she divorced him. On April 20, 1968, defendant chased his wife with knife in hand; knocked her down; plunged the knife down toward her; and, although he did not actually strike her with it, she was cut on the hand during the scuffle. In the latter part of May 1968 defendant pointed a loaded gun at his wife's head, saying: "If I can't have you, nobody else can"; was dissuaded from shooting her when her sister forced her way between them; and relinquished the gun to another person upon request. On August 25, 1968, defendant was in an automobile with his wife sitting beside him; engaged her in a quarrel; was driving at 30 miles per hour; headed the automobile toward the edge of a steep embankment, referred to in the testimony as a cliff; and jumped out. His wife was confined by seat belts but managed to free herself; steered the automobile away from the embankment; and jumped out. She left the scene and reported the incident to the police. Defendant went to New Mexico; was charged with assault with intent to murder; voluntarily returned from New Mexico following institution of extradition proceedings; was arrested; pled guilty to assault by means of force likely to produce great bodily harm; and on October 10, 1969 was placed on probation.

An investigator at the scene of the explosion found fragments of small flashlight batteries adhering to bits of masking tape. Two days before the explosion defendant was in the garage of a friend. Following the accident the police found a clock in the garage from which an electrical cord had been severed and also found some masking tape. The last time the owner of the garage saw the clock it was intact. She previously had not seen the masking tape.

On the morning of the explosion police officers went to a residence owned by defendant's mother with whom he was staying; entered with her permission; asked for defendant; and were told he was asleep in his bedroom. The mother aroused defendant and he came into the living room. Some of the officers interrogated him respecting his whereabouts during the previous night. In the course of this interrogation Officer Schilder asked Mrs. Daniels if he might speak with her in private; when she replied in the affirmative,

left the living room with her; and went to another room. The sole purpose of speaking with the mother in private was to verify defendant's statements respecting his whereabouts the previous night. After inquiry pertinent to this purpose, Schilder asked the mother if her son had any batteries, wires or other such equipment in the house. She replied, to her knowledge, he did not have any of these items, however, "the officers were certainly welcome to look in the room where he slept and see if there was anything like that there." Schilder then asked the mother if her son paid rent, and she replied he did not, that "he merely stayed there"; and also asked if the house was hers and she said it was "and that he was merely staying there as her—free, not paying any rent." Thereupon Schilder and other officers proceeded to the room identified by the mother as the room where defendant slept, and made a search. On top of the dresser were four .30 caliber shells without powder inside, a prescription bottle containing what appeared to be black powder, and a pair of surgical scissors. Inside various dresser drawers the officers found several dry-cell batteries of different sizes and voltages, a small electric motor, an 8 inch piece of red wire, and a pair of wire cutters. Between the mattreses on the bed the officers found a .30 caliber rifle, broken down. In the corner of the room was a suitcase, thereafter identified as defendant's, which the officers opened. In it were papers, books and bottles containing quantities of saltpeter, sulphur and charcoal, which are the ingredients of black powder. All of the foregoing items were taken into custody.

After his arrest defendant was told his wife "had been hurt badly," was in a hospital and might not live; was asked if he cared; and replied: "Hurray, hurray, hurray; hurray if she lives and hurray if she dies. Doesn't make any difference if she lives or if she dies."

Prior to trial defendant moved to suppress the evidence obtained while searching his mother's house upon the ground it was the product of an illegal search and seizure. The motion was denied. Defendant asserts denial of his motion was error, requiring a reversal.

The issue is whether the search upon consent of the mother, under the circumstances, was reasonable.

We hold the mother was authorized to consent to the search of the premises owned by her, including the bedroom in which the son slept, the dresser, dresser drawers and the bed in that bedroom; in any event, the search thereof was reasonable because conducted under a reasonable belief, in good faith, the mother was authorized to consent; and, for these reasons, the search was legal; but the mother did not have authority to consent to the search of the suitcase; any reliance upon a claimed consent to search

the suitcase was unreasonable; and, for this reason, the search of the suitcase was illegal.

Both sides direct major attention to the general rules governing a search upon consent by a co-occupant, and support their respective positions by an application of these rules to their interpretation of the evidence.

A search of the premises occupied by more than one person is reasonable where made upon the consent and in the presence of one of the joint occupants who actually is entitled to enter upon and search the premises. (*People* v. *Ingle,* 53 Cal.2d 407, 416 [2 Cal.Rptr. 14, 348 P.2d 577]; *Vandenberg* v. *Superior Court,* 8 Cal.App.3d 1048, 1053 [87 Cal.Rptr. 876].) Likewise, the search of such premises is reasonable if made upon consent of a joint occupant "who, *by virtue of his relationship or other factors,* the officers reasonably and in good faith believe has authority to consent" even though he lacks such authority. (Italics ours.) (*People* v. *Smith,* 63 Cal.2d 779, 799 [48 Cal.Rptr. 382, 409 P.2d 222]; *People* v. *Hill,* 69 Cal.2d 550, 554 [72 Cal.Rptr. 641, 446 P.2d 521]; *People* v. *Gorg,* 45 Cal.2d 776, 783 [291 P.2d 469].) Excepted from the latter rule is a search conducted without the consent and over the objection of a co-tenant then present whose property is seized as a product of the search. (*People* v. *Frank,* 225 Cal.App.2d 339, 342 [37 Cal.Rptr. 202].)

Pertinent and distinguishing circumstances at bench include the fact the person consenting to the search was the mother of the defendant who owned exclusively the entire premises, including the bedroom in which he slept. Consent to search was volunteered by the mother rather than requested by the officers. Defendant was not in the bedroom at the time the search was conducted.

The evidence supports the inference, implicit in the order denying defendant's motion to suppress, defendant did not have exclusive possession or control over the bedroom which he was permitted to use; and his mother, by virtue of her ownership and the circumstances in the case, had the right to enter and search the bedroom at will. The trial judge who ruled upon the motion to suppress, in an oral opinion preceding his denial thereof, expressed the conclusion defendant's occupancy of the bedroom was not exclusive but was subject to the right of the mother to consent to its search.

The search of the bedroom used by a son living with a parent who owns the premises of which the bedroom is a part, when made with the consent of the parent, is reasonable, absent circumstances establishing the son has been given exclusive control over the bedroom. (*Vandenberg* v. *Superior Court, supra,* 8 Cal.App.3d 1048, 1053; *People* v. *Egan,* 250 Cal.App.2d 433, 434 [58 Cal.Rptr. 627]; *United States* ex rel. *Combs* v. *La Vallee,* 417

F.2d 523, 524, 526, cert. den. 397 U.S. 1002 [25 L.Ed.2d 413, 90 S.Ct. 1150]; *Woodard* v. *United States,* 254 F.2d 312 [102 App.D.C. 393], cert. den. 357 U.S. 930 [2 L.Ed.2d 1372, 78 S.Ct. 1375]; *Maxwell* v. *Stephens,* 229 F.Supp. 205, 209; *Maxwell* v. *State,* 236 Ark. 694 [370 S.W.2d 113, 118]; *Rivers* v. *State* (Fla.) 226 So.2d 337, 338; *State* v. *Haggard,* 89 Idaho 217 [404 P.2d 580, 584]; *Gray* v. *Commonwealth,* 198 Ky. 610 [249 S.W. 769]; *McCray* v. *State,* 236 Md. 9 [202 A.2d 320, 321-322]; *State* v. *Kinderman,* 271 Minn. 405 [136 N.W.2d 577, 580]; *State* v. *Carder,* 9 Ohio St.2d 1 [38 Ohio Ops.2d 1, 222 N.E.2d 620, 627]; see also *Maxwell* v. *State, supra,* 370 S.W.2d 113, 118-119; *State* v. *Hagan,* 47 Idaho 315 [274 P. 628, 629]; *State* v. *Ray,* 274 N.C. 556 [164 S.E.2d 457, 465].) ▆ Parents with whom a son is living, on premises owned by them, do not ipso facto relinquish exclusive control over that portion thereof used by the son. To the contrary, the mere fact the son is permitted to use a particular bedroom, as such, does not confer upon him exclusive control thereof. (Gen. see *People* v. *Linke,* 265 Cal.App.2d 297, 316, 317 [71 Cal.Rptr. 371].) His occupancy is subservient to the control of his parents. (*State* v. *Haggard, supra,* 89 Idaho 217 [404 P.2d 580, 584]; *State* v. *Hagan, supra,* 274 P. 628, 629; *State* v. *Kinderman, supra,* 136 N.W.2d 577, 580.) He may be excluded from the premises by them at any time. (*Maxwell* v. *Stephens, supra,* 229 F.Supp. 205, 211.) They may enter and search the room at will, or may authorize others to make such a search. (*Maxwell* v. *Stephens, supra,* 229 F.Supp. 205, 211; *State* v. *Kinderman, supra,* 136 N.W.2d 577, 581; *McCray* v. *State, supra,* 202 A.2d 320, 322.)

▆ In the case at bench the fact defendant was an adult or was present in an adjoining room while the search was conducted did not derogate the mother's authority to consent. (*State* v. *Kinderman, supra,* 136 N.W.2d 577, 580; *Gray* v. *Commonwealth,* supra, 249 S.W. 769.)

In any event, the evidence at bench supports the finding, implicit in the order of denial, the officers reasonably and in good faith believed defendant's mother had authority to consent to the search of the bedroom occupied by him; and, under these circumstances, the search was reasonable. (*People* v. *Hill, supra,* 69 Cal.2d 550, 554; *People* v. *Caritativo,* 46 Cal.2d 68, 73 [292 P.2d 513]; *People* v. *Gorg, supra,* 45 Cal.2d 776, 783.) Contrary to defendant's contention, the fact he was present in an adjoining room when the search occurred does not insulate the situation at bench from application of the foregoing rule. The mere presence of the defendant on the premises does not dictate a finding, as a matter of law, the officers did not reasonably believe his mother was authorized to consent to a search of the bedroom. (Gen. see *People* v. *Linke, supra,* 265 Cal.App.2d 297, 315.) This is not a case in which the defendant personally objected to the search under circumstances which would have supported a conclusion he was in

exclusive possession of that portion of the premises searched, as in *People* v. *Frank, supra,* 225 Cal.App.2d 339, 342, upon which defendant relies. The circumstances at bench, bearing in mind defendant's mother invited the officers to search the room in which her son slept, told them she was the owner of the house and her son lived there "free," directed them to the room in question and accompanied them during the search, support a finding the officers reasonably believed the mother had authority to consent.

The consent to search covered not only the bedroom as such but also the furniture therein, i.e., the dresser, dresser drawers and bed. (*People* v. *Egan, supra,* 250 Cal.App.2d 433, 436.) On the other hand, the consent did not authorize a search of defendant's suitcase over which the mother had no actual control, and the evidence does not support a conclusion the officers in good faith, although mistakenly, reasonably believed she had such control. A search of the suitcase extended the scope of the consent and was unlawful under the principles stated and applied in *People* v. *Cruz,* 61 Cal.2d 861, 866 [40 Cal.Rptr. 841, 395 P.2d 889], *People* v. *Stage,* 7 Cal.App.3d 681, 683 [86 Cal.Rptr. 701]; *People* v. *Egan, supra,* 250 Cal.App.2d 433, 436, and *People* v. *Murillo,* 241 Cal.App.2d 173, 177 [50 Cal.Rptr. 290].

■ Denial of the motion to suppress was not error except as to that portion directed to the contents of defendant's suitcase, consisting of papers, books and bottles containing saltpeter, sulphur and charcoal. The contents were admitted in evidence. However, denial of the motion with respect to them and their admission in evidence does not require a reversal unless defendant was prejudiced thereby under the rule stated in *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243]. (*People* v. *Parham,* 60 Cal.2d 378, 385 [33 Cal.Rptr. 497, 384 P.2d 1001]; *People* v. *Tarantino,* 45 Cal.2d 590, 595 [290 P.2d 505].) The contents of the suitcase were not related directly to the type of explosive or detonating mechanism used in the bomb causing the explosion in question; at most, were evidence of defendant's interest in gunpowder; and were of insignificant probative worth. We conclude, after an examination of the entire cause, including the evidence, it is not reasonably probable a result more favorable to defendant would have been reached if the contents of the suitcase had not been admitted in evidence.

■ Defendant contends the court erred in admitting evidence of the assaults by defendant upon his wife in 1968 upon the ground such evidence was proof of prior offenses inadmissible under the rule stated and applied in *People* v. *Kelley,* 66 Cal.2d 232, 238 [57 Cal.Rptr. 363, 424 P.2d 947], and *People* v. *Haston,* 69 Cal.2d 233, 246-247 [70 Cal.Rptr. 419, 444 P.2d 91].

It is elementary, evidence of motive to commit an offense is evidence of the identity of the offender. (*People* v. *Weston,* 169 Cal. 393, 396 [146 P. 871]; *People* v. *Argentos,* 156 Cal. 720, 726 [106 P. 65]; *People* v. *Soeder,* 150 Cal. 12, 15 [87 P. 1016]; *People* v. *Mullen,* 115 Cal.App.2d 340, 343 [252 P.2d 19]; *People* v. *Gonzales,* 87 Cal.App.2d 867, 877 [198 P.2d 81].) In *People* v. *Argentos, supra,* 156 Cal. 720, 726, the court said: "In a case where the identity of a person who commits a crime is attempted to be proven by circumstantial evidence, such as in the case at bar, evidence of a motive on the part of a defendant charged is always a subject of proof, and the fact of motive *particularly* material." (Italics ours.) Evidence showing jealousy, quarrels, antagonism or enmity between an accused and the victim of a violent offense is proof of motive to commit the offense. (*People* v. *Shaver,* 7 Cal.2d 586, 592 [61 P.2d 1170]; *People* v. *De Moss,* 4 Cal.2d 469, 473 [50 P.2d 1031]; *People* v. *Weston, supra,* 169 Cal. 393, 396; *People* v. *Mullen, supra,* 115 Cal.App.2d 340, 343.) Likewise, evidence of threats of violence by an accused against the victim of an offense of violence is proof of the identity of the offender. (*People* v. *Merkouris,* 46 Cal.2d 540, 557 [297 P.2d 999].) In addition, as stated in *People* v. *Bufarale,* 193 Cal.App.2d 551, 558 [14 Cal.Rptr. 381]: "Evidence of a defendant's prior misconduct may be admissible where it tends to show that he is guilty of the crime charged 'by showing a peculiar or characteristic behavior pattern' manifested by his conduct in both instances. (*People* v. *Cavanaugh,* 44 Cal.2d 252, 265-266 [282 P.2d 53].)" Evidence relevant as proof of motive or behavior pattern is not inadmissible because it also is proof of prior crimes. (*People* v. *Cavanaugh, supra,* 44 Cal.2d 252, 265-266; *People* v. *Weston, supra,* 169 Cal. 393, 396; *People* v. *Argentos, supra,* 156 Cal. 720, 726; *People* v. *Soeder, supra,* 150 Cal. 12, 15; *People* v. *Gonzales, supra,* 87 Cal.App.2d 867, 877-878.) Defendant's objection to the evidence in proof of his prior assaults upon his wife is without merit.

■ Defendant also contends it was error to admit in evidence a book entitled "Explosives and Homemade Bombs." Identification of the book admitted in evidence as a copy of the book seen in defendant's dormitory room was satisfactorily established. Defendant objects particularly to admission of the contents of the book, asserting they were inadmissible under the best evidence rule, i.e., Evidence Code section 1500. The book was admitted in evidence to show defendant had knowledge of its contents and not in proof of the truth of its contents. No error occurred. (Gen. see Witkin, Cal. Evidence (2d ed. 1966) §§ 690, 691.)

■ A paper bag and its contents taken from the searched bedroom were admitted in evidence over defendant's objection they were immaterial. The contents consisted of batteries, scissors, a bus schedule, wire, sandpaper

and some sticks. Proof of possession of these articles by defendant, when considered with other evidence, was material on the issue of his interest in explosives. Whether the particular articles were relevant to the issue was a determination subject to an exercise of discretion by the trial court. Even through the relevancy is minimal, no abuse in the exercise of discretion is shown. Defendant's contention the court erred in overruling his objection is without merit.

Officer Williams was recalled by the prosecution on rebuttal. His testimony, in the main, was repetitious of that given on direct. Defendant contends admission of this testimony was error. The incident is of insignificant consequence in the case; concerns an exercise of discretion by the trial court; does not indicate an abuse of discretion; was not prejudical under the rule in *People* v. *Watson, supra,* 46 Cal.2d 818, 836; and furnishes no reason for reversal.

Defendant also contends the court erred in permitting the prosecution to call him for further cross-examination after he had completed his testimony. No error occurred as the matter was subject to an exercise of discretion. (Evid. Code, §§ 774, 778; *People* v. *Rosoto,* 58 Cal.2d 304, 352 [23 Cal.Rptr. 779, 373 P.2d 867].) No abuse of discretion is shown.

Defendant asserts several instances of alleged misconduct by the prosecuting attorney during the course of his argument as a ground for reversal. In his argument the prosecuting attorney commented upon the contents of the book entitled "Explosives and Homemade Bombs." In some instances these comments may have been immaterial to the case. However, any of the allegedly objectionable comments in no way could have influenced the decision of the jury because, as urged by defendant, they were immaterial to the issue decided and there is no showing in what manner such comments might have affected the result. In support of an argument defendant could have obtained dynamite from unknown sources, the prosecuting attorney, in part, relied upon facts not supported by the evidence but allegedly of common knowledge. Defendant contends the facts in question were not of common knowledge, and the prosecutor was guilty of misconduct in asserting their existence. In some instances reliance by the prosecutor on matters of alleged common knowledge was of questionable propriety. However, in the main, the prosecutor, in his argument complied with the applicable rules stated in *People* v. *Love,* 56 Cal.2d 720, 730 [16 Cal.Rptr. 777, 17 Cal.Rptr. 481, 366 P.2d 33, 809], and in those instances where he failed to comply, his misconduct was not of that nature had it not occurred it is probable the verdict might have been different. It is of

note defense counsel commenced his argument to the jury by directing attention to and emphasizing a statement by the prosecuting attorney in the latter's opening argument that what he said in the case, "at this stage of the proceedings or at most stages of the proceedings, has not been evidence and will not be evidence in the case." Also the court instructed the jury they might not consider as evidence any statement of counsel. On one occasion during his argument the prosecuting attorney suggested members of the jury should place themselves in the position of the victim. An objection to the statement was sustained. The remark was prompted by defense counsel's argument the prior incidents between defendant and the victim were of little moment; was an isolated comment of insignificant consequence in a long argument; and does not justify a reversal.

Defendant testified he made black powder and firecrackers which was the reason he was in possession of the ingredients essential to their manufacture. The prosecuting attorney made a statement, allegedly unsupported by any evidence, from which it could be inferred defendant's explanation of his possession of the ingredients of black powder was subject to doubt. This is another isolated instance of a comment of no significant consequence.

As to any of the comments made by the prosecuting attorney which might have constituted misconduct, we are of the opinion, after a review of the entire case including the evidence, it is not probable a different result would have been reached if the comments had not been made. Under these circumstances, a reversal on account thereof is not authorized. (*People* v. *Watson, supra,* 46 Cal.2d 818, 836.)

 The defendant asserts error in the refusal of the court to give two requested instructions. One of these instructions concerned the weight to be given an opinion expressed by a witness who did not testify as an expert. Assuming there was opinion testimony given by a witness who was not an expert, the instructions given adequately advised the jury respecting its evaluation of such testimony. The requested instruction was repetitious. The other instruction was on the issue of reasonable doubt; used the term "near certainty" in lieu of the term "moral certainty," which was used in the instructions given by the court; and the refusal to give it was not error. (*People* v. *Hughes,* 268 Cal.App.2d 796, 800-801 [74 Cal.Rptr. 107].)

 Defendant contends the evidence is insufficient to support the verdict, claiming it only raises a suspicion of his guilt. The facts heretofore related are supported by substantial evidence and in turn identify the defendant as the person who caused the explosion which is the basis of the offense charged.

The foregoing conclusions are determinative of the appeal. For this reason we need not consider other contentions raised by the defendant.

The judgment is affirmed.

Brown (Gerald), P. J., and Ault, J., concurred.

A petition for a rehearing was denied March 31, 1971, and appellant's petition for a hearing by the Supreme Court was denied May 13, 1971. Peters, J., was of the opinion that the petition should be granted.