Filed 1/8/24  P. v. Simmons CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>PAUL SIMMONS,<br><br>     Defendant and Appellant. | A163574<br><br>(Contra Costa County<br>Super. Ct. No. 52002863) |

Defendant Paul Simmons was convicted of first-degree robbery and first-degree burglary.  We reject Simmons' challenge to his convictions, made on the basis that the trial court should not have admitted evidence of his prior assault on one of the victims.

Simmons also argues the matter should be remanded for resentencing because of changes to Penal Code section 1170, subdivision (b)[1] that became effective after his sentencing, and because the trial court misunderstood the scope of its discretion to strike a prior serious felony allegation.  We conclude remand for resentencing is required based on recent statutory changes.

---

[1]     All further statutory references are to the Penal Code unless otherwise stated.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Simmons was charged with first-degree residential robbery with an enhancement for personal use of a firearm (§§ 211, 12022.53, subd. (b); count one) and first-degree burglary, person present (§ 459; count two). The second amended information alleged that Simmons had a prior strike conviction (§ 667, subds. (d), (e)) and a prior serious felony conviction (§ 667, subd. (a)(1)), and that he was ineligible for probation due to six prior felony convictions (§ 1203, subd. (e)(4)).

### *September 2018 Robbery*

We provide a high-level summary of the trial evidence to give context to the claims raised on appeal.

Simmons was convicted of assaulting M.R. with a firearm in 2013. (§ 245, subd. (a)(2).) Approximately five years later, M.R. and his wife, T.R., were living together with their two young daughters.

In the early morning of September 17, 2018, while T.R. was in bed, she heard a sound "like footsteps" from the bathroom, which was separated from the bedroom by a closed curtain, and saw two feet underneath the curtain. Her daughters were asleep next to her. She thought it was M.R., so she called out to him. When she did not hear a response, she walked up to the curtain and opened it, revealing a man holding "two bigger guns, rifle style" and a handgun, all of which she recognized as her husband's guns. The man was wearing a black mask that "pretty much covered" his face, and he was "[f]ully covered pretty much head to toe, all black."

After T.R. opened the curtain, the man pointed the handgun at her. She put her hands up and started backing up out of the room and into the hallway. When T.R. got to the hallway, her oldest daughter called out for her. The man then motioned with the gun towards the stairs, so T.R. turned

2

around and walked downstairs.  The man followed.  As T.R. reached the bottom of the stairs, she ran to the sliding glass door and opened it.  At that point, the man walked out the garage entrance.  T.R. ran upstairs, put her daughters in her closet, and called 911.

After police arrived, M.R. returned home from work.  He and T.R. discovered that several of their possessions were missing, including guns, jewelry, and headphones.

About a week later, a Livermore police officer went to a local pharmacy after receiving a report of a suspicious man inside the store.  He saw the man, later identified as Simmons, at the back of the store and arrested him.  Police officers searched Simmons' backpack and found, among other items, handguns, jewelry, and a shaved car key.  The arresting officer photographed the items recovered from Simmons, and the Livermore Police Department posted the photographs on Facebook.  T.R. recognized some of her missing items in the Facebook post.

The following day, a police detective executed search warrants for two residences in Livermore connected to Simmons.  At one of the houses, the detective found firearms belonging to M.R.  A subsequent search of data retrieved from Simmons' cell phone, conducted pursuant to a search warrant, revealed searches for floor plans of T.R. and M.R.'s house.

***Verdict and Sentencing***

The jury found Simmons guilty as charged and found true the firearm enhancement allegation for count one.  In a bifurcated proceeding, the trial court found true the allegations regarding his prior convictions and sentenced Simmons to 27 years in state prison.

3

## I. Trial Court Did Not Err in Admitting Evidence of Simmons' Prior Assault

### A. Additional Facts

Before trial, the prosecution moved to admit evidence of Simmons' prior assault on M.R. with a firearm to show his motive, identity, and intent under Evidence Code section 1101, subdivision (b). Simmons moved to exclude any evidence of prior criminal or bad acts.

At a hearing on the motions, the prosecution claimed Simmons used to be friends with T.R. and M.R. but there was "some sort of relationship issues which led to Simmons becoming angry and shooting at [M.R.]" Defense counsel argued the court should not admit evidence of the prior assault because the assault was too dissimilar to the alleged offenses, and he objected to the evidence as overly prejudicial under Evidence Code section 352. The court granted the People's motion to admit the evidence, stating the evidence was "very" probative as to motive, intent, and identity because of Simmons' prior relationship with M.R. and the violent nature of the crimes.

T.R. testified at trial that before she and M.R. married, they were friends with Simmons, but she had not seen him since 2013. On one night in November 2013, she was at M.R.'s apartment. At some point during the evening, M.R.'s friend knocked on the door and told them somebody was by M.R.'s car wearing a face mask. M.R. went outside. While T.R. waited in the apartment, she heard two or three gunshots, and M.R. then returned to the apartment and laid on the floor. The police responded, and there was a court proceeding related to the shooting.

Following T.R.'s testimony, the prosecution presented a certified record of conviction showing Simmons was convicted of assault with a firearm

4

against M.R. The trial court admitted the record of conviction and instructed the jury that the evidence is admitted for "a limited purpose . . . . [I]t may go to whether or not the People can prove the identity and the intent of the perpetrator of the charged crimes."

## B. Analysis

Simmons contends the trial court prejudicially erred in admitting evidence of his prior assault upon M.R. under Evidence Code section 1101, subdivision (b). We find no error.

Evidence "a person committed a crime, civil wrong, or other act" is inadmissible to establish one's propensity for criminal behavior but is admissible when relevant to prove "some fact," such as "motive, opportunity, intent, preparation, plan, knowledge, [or] identity." (Evid. Code, § 1101, subds. (a), (b).) Because such evidence "may be highly inflammatory, its admissibility should be scrutinized with great care." (*People v. Medina* (1995) 11 Cal.4th 694, 748.) Under Evidence Code section 352, the trial court should admit the evidence only if it determines its probative value is not "substantially outweighed by the probability that its admission would create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (*People v. Avila* (2006) 38 Cal.4th 491, 586–587; see Evid. Code, § 352.) On appeal, we review a trial court's ruling under Evidence Code sections 1101 and 352 for abuse of discretion. (*People v. Cage* (2015) 62 Cal.4th 256, 274 (*Cage*).)

We agree with the People that evidence of the prior assault was admissible under Evidence Code section 1101, subdivision (b) to show Simmons was motivated by his animosity towards M.R. to commit the offenses. Evidence of a prior crime may be admissible where it " 'evidences the existence of a motive . . . . [T]he motive is the cause, and both the

5

charged and uncharged acts are effects. *Both crimes are explainable as a result of the same motive.'"* (*People v. Spector* (2011) 194 Cal.App.4th 1335, 1381.) While motive is not an ultimate fact put at issue by the charges, it is an intermediate fact that may reasonably prove a person's intent or identity. (*Cage, supra*, 62 Cal.4th at p. 274.) And whether Simmons was the person who committed the alleged offenses and whether he had the intent to commit theft were the issues the jury was told it could use this evidence to resolve.

Although Simmons suggests there were inadequate similarities between the charged crimes and the prior assault, "the probativeness of other-crimes evidence on the issue of motive does not necessarily depend on similarities between the charged and uncharged crimes, so long as the offenses have a direct logical nexus." (*People v. Demetrulias* (2006) 39 Cal.4th 1, 15; see *People v. Pertsoni* (1985) 172 Cal.App.3d 369, 374 ["When . . . the mere *fact* of the prior offense gives rise to an inference of motive, similarity of the offenses is irrelevant"].)[2] Nor is there a requirement that the victims of the charged offense and uncharged offense be identical. (See, e.g., *People v. McCurdy* (2014) 59 Cal.4th 1063, 1069–1070, 1097–1098 [evidence that defendant molested his sister as a child was admissible to show motive in prosecution for murdering and kidnapping a child for the purpose of committing a lewd act]; see also *People v. Pertsoni*, at pp. 371–372, 374–375.)

---

[2]  Simmons cites to *People v. Ewoldt* (1994) 7 Cal.4th 380, 403 for the rule that prior misconduct evidence is only admissible to prove identity if " '[t]he pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature.' " That rule applies where the prior misconduct evidence is used to directly show identity, which is not the case here. (See *People v. Scheer* (1998) 68 Cal.App.4th 1009, 1018 [contrasting the high degree of similarity required to prove identity with the similarity required to establish motive].)

*Cage* is instructive. There, the defendant was charged with murdering his wife's mother and brother. (*Cage, supra*, 62 Cal.4th at p. 263.) Before the murder, the defendant's wife had left him and taken their two children out of the country. (*Id.* at p. 266.) The trial court admitted evidence that the defendant had previously engaged in abusive and violent behavior toward his wife, one of their two children, and his wife's brother. (*Id.* at pp. 263–264, 272–273.) On appeal, the defendant argued the evidence was impermissible propensity evidence. (*Id.* at p. 273.) Our high court affirmed the trial court's ruling under Evidence Code section 1101, concluding the prior acts were important evidence of the defendant's motive in committing both murders because they showed that the defendant reacted with anger, hostility, and punishment when his wife did not comply with his requests, and that he had for years sought to assert control over his wife, their child, and her brother by threatening and committing violent and abusive acts against them. (*Id.* at pp. 273–274.) The *Cage* court determined the prior acts supported a logical inference that the defendant carried out his threats by committing the murders, "intending them as retribution for [his wife] leaving him and taking his son. A direct relationship or nexus, thus, existed between the prior incidents and the charged crimes." (*Id.* at p. 274.)

Here, as in *Cage*, "[a] direct relationship or nexus" existed between the prior assault and the charged offenses, given the violent nature of the assault and the relationship between the victims of the offenses. (See *Cage, supra*, 62 Cal.4th at pp. 273–274.) The evidence of the prior assault was relevant to show Simmons' animosity toward M.R. and the lengths to which this animosity would take him, thus tending to show he intended to rob M.R. and his family as an act of ill will or retribution. For the same reason, the evidence was also relevant to the issue of identity, which was contested at

7

trial. "It is elementary, evidence of motive to commit an offense is evidence of the identity of the offender." (*People v. Daniels* (1971) 16 Cal.App.3d 36, 46.)

We also reject the claim that the court failed to consider Evidence Code section 352 in admitting the prior assault evidence, and that had it done so, "it may have reached a resolution which informed the jury that the parties had known each other prior to the current incident but would have omitted the assault incident, the effect of which was undoubtedly prejudicial[.]" "[W]hen ruling on a [Evidence Code] section 352 motion, a trial court need not expressly weigh prejudice against probative value, or even expressly state that it has done so. All that is required is that the record demonstrate the trial court understood and fulfilled its responsibilities under [Evidence Code] section 352." (*People v. Williams* (1997) 16 Cal.4th 153, 214; accord, *People v. Padilla* (1995) 11 Cal.4th 891, 924, overruled on other grounds in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.)

Applying these rules, the trial court's analysis in this case was sufficient. After hearing argument on defense counsel's Evidence Code section 352 objection, the court granted the People's motion to admit the prior assault evidence, stating, "I've weighed the relevance against the prejudicial effect of this evidence, and it's very probative with regards to motive and intent. And, in fact, on this record it appears to the Court to be very relevant with regards to identity."

To the extent Simmons claims the prior assault evidence was unduly prejudicial, we conclude the trial court did not abuse its discretion in its analysis under Evidence Code section 352. " '[B]ecause a motive is ordinarily the incentive for criminal behavior, its probative value generally exceeds its prejudicial effect, and wide latitude is permitted in admitting evidence of its existence.' " (*People v. Gonzales* (2005) 126 Cal.App.4th 1539, 1550.) The

prior assault was "not significantly more inflammatory" than the charged offenses of residential robbery with use of a firearm and burglary with person present. (*People v. Eubanks* (2011) 53 Cal.4th 110, 144 [potential for prejudice is decreased when uncharged acts are no more inflammatory than the charged offenses]; *People v. Karis* (1988) 46 Cal.3d 612, 638 [prejudicial evidence under Evidence Code section 352 is that " 'which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues' "].)  And the evidence did not involve an undue consumption of time at trial.  In addition, the trial court minimized the possibility of prejudice and jury confusion by instructing that the evidence was admissible only as proof of identity, motive, and intent, and by admonishing the jury not to conclude from the evidence that Simmons had a bad character or a propensity to commit crime.  We presume the jurors followed these instructions. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

Finally, Simmons contends the evidence of his prior assault was not relevant to motive given the five-year gap between the assault and the charged offenses.  " 'Remoteness' or 'staleness' of prior conduct is an appropriate factor to consider in a [Evidence Code] section 352 analysis" (*People v. Harris* (1998) 60 Cal.App.4th 727, 739), but the time lapse of about five years between the prior assault on M.R. and the commission of the charged offenses does not significantly lessen the probative value of this evidence.  (See *People v. Zepeda* (2001) 87 Cal.App.4th 1183, 1212 [probative value of "prior shooting was not affected" by fact that it occurred "about five years before the current shooting"].)

In sum, the trial court did not err in admitting the prior assault evidence under Evidence Code sections 1101, subdivision (b) and 352.

9

## II.    Simmons Is Entitled to a New Sentencing Hearing

### A.    Additional Facts

In September 2021, the trial court sentenced Simmons to 27 years in prison, consisting of the upper term of six years on count one, first-degree robbery (§ 211), doubled by the prior strike (§ 667, subds. (d), (e)), plus consecutive terms of ten years for the firearm enhancement (§ 12022.53, subd. (b)) and five years for the prior serious felony enhancement (§ 667, subd. (a)(1)).  The court imposed one-third the midterm on count two, first-degree burglary (§ 459), but stayed the term pursuant to section 654.

The trial court explained it was imposing the aggravated term for the robbery conviction based on the following aggravating factors set forth in the California Rules of Court (all "rule" references are to the Rules of Court): the offense involved "great violence" (rule 4.421(a)(1)); the defendant used a firearm (rule 4.421(a)(2)); the victim was "particularly vulnerable" (rule 4.421(a)(3)); and the manner in which the crimes were carried out indicated "planning," "sophistication," and "professionalism" (rule 4.421(a)(8)).  The court also cited three factors related to Simmons' criminal record, including that his prior convictions were "of increasing seriousness" (rule 4.421(b)(2)) and he had prior prison terms (rule 4.421(b)(3)).  The court relied on a certified copy of conviction for at least one of the prior convictions and a "certified rap sheet" of the prior convictions alleged in the second amended information.

Regarding factors in mitigation, the trial court found "virtually none." Although Simmons stated he was "born an addict" and was "abandoned" by his parents at a young age, the court found his drug addiction was not a factor in mitigation as he had "so many opportunities to address that addiction if it exists" but "refuse[d] to rehabilitate."  Due to the lack of

10

mitigating factors, the court said it was "obliged to sentence [Simmons] to the aggravated sentence."

## B.    Analysis

Simmons argues the trial court erred in imposing the upper term on the robbery conviction considering the new sentencing provisions in section 1170, subdivision (b), that became effective on January 1, 2022.[3]  We agree.

On January 1, 2022, while this appeal was pending, Senate Bill No. 567 (2021–2022 Reg. Sess.; Stats. 2021, ch. 731, §§ 1.3, 3(c)) amended section 1170 in two significant ways.  First, the middle term has become the presumptive term (§ 1170, subd. (b)(1)), and the trial court is authorized to impose the upper term only if there is one or more aggravating circumstances based on facts either "stipulated to by the defendant, or . . . found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial" (§ 1170, subd. (b)(2)).  However, under section 1170, subdivision (b)(3), "the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."  Second, trial courts must impose the lower term (unless contrary to the interests of justice) if certain circumstances— including the defendant's childhood trauma or youth—were contributing factors to the commission of the offense.  (§ 1170, subd. (b)(6)(A).)

---

[3]    Simmons also argues the trial court erred in imposing the "upper" ten-year term for the firearm enhancement.  Section 1170 applies where "the statute specifies three possible terms . . . ."  (§ 1170, subdivision (b)(1).)  The firearm enhancement was for violation of section 12022.53, subdivision (b), which specifies only one possible term of ten years.  Thus, the court did not sentence Simmons on the firearm enhancement pursuant to a statute that specifies three possible terms.  (See § 1170, subd. (b).)

11

The parties agree, as do we, that Simmons is entitled to retroactive application of the ameliorative changes effected by Senate Bill No. 567. (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1039.) The People maintain, however, that remand is unnecessary because the court properly relied on Simmons' prior convictions, and a jury would have "certainly" found true the other aggravating circumstances.

There is currently a split of authority on the applicable standard for assessing prejudice in this situation. (See *People v. Flores, supra*, 75 Cal.App.5th at p. 500 [error is harmless if a reviewing court concludes beyond a reasonable doubt that a jury "would have found true [beyond a reasonable doubt] at least a single aggravating circumstance"]; *People v. Lopez* (2022) 78 Cal.App.5th 459 (*Lopez*) [error is harmless if the jury would have found *all* of the aggravating circumstances that the trial court relied on true beyond a reasonable doubt]; *People v. Dunn* (2022) 81 Cal.App.5th 394, 409–410, review granted Oct. 12, 2022, S275655 [applying a two-step approach with state law harmlessness incorporated into both steps]; *People v. Falcon* (2023) 92 Cal.App.5th 911, 938, review granted Sept. 13, 2023, S281242 (*Falcon*) [concluding that "resentencing is unwarranted in retroactive cases only when the upper term remains legal under state and federal law at the first step; and, if so, . . . at a mandatory second step, the record clearly indicates the trial court would impose the upper term had it known the middle term was the presumptive maximum sentence"].) We adhere to the view expressed in our decision in *People v. Ross* (2022) 86 Cal.App.5th 1346, 1354, review granted Mar. 15, 2023, S278266 (*Ross*), that *Lopez* articulates the correct standard.

*Lopez* established the following two-step harmless error standard: "To determine whether prejudice resulted from a trial court's failure to apply the

12

new version of the sentencing law [under Senate Bill No. 567], we first ask 'whether the reviewing court can conclude beyond reasonable doubt that a jury would have found true beyond a reasonable doubt all of the aggravating factors on which the trial court relied in exercising its discretion to select the upper term. If the answer to this question is "yes," then the defendant has not suffered prejudice from the court's reliance on factors not found true by a jury in selecting the upper term. However, if the answer to the question is "no," we then consider the second question, which is whether a reviewing court can be certain, to the degree required by *People v. Watson* [(1956) 46 Cal.2d 818, 836], that the trial court would nevertheless have exercised its discretion to select the upper term if it had recognized that it could permissibly rely on only a single one of the aggravating factors, a few of the aggravating factors, or none of the aggravating factors, rather than all of the factors on which it previously relied. If the answer to both of these questions is "no," then it is clear that remand to the trial court for resentencing is necessary.' " (*People v. Ross, supra*, 86 Cal.App.5th at pp. 1354–1355.)

This court found the rationale in *Lopez* "for adding a state law harmless error component both logical and compelling," and it agreed with *Lopez* that the first step of the prejudice inquiry asks whether a reviewing court can conclude beyond a reasonable doubt that a jury would have found true beyond a reasonable doubt *every* factor on which the court relied, and not simply at least one aggravating factor. (*People v. Ross, supra*, 86 Cal.App.5th at pp. 1354, 1355, fn. 8.) We see no reason to depart from *Ross* on the prejudice standard applicable to the amendments effected by Senate Bill No. 567.[4] We therefore apply *Lopez*'s prejudice analysis.

_____

[4] *Falcon* disagreed with *Ross* and *Lopez* regarding the first step of the prejudice analysis, explaining that there was "no clear reason to depart from

Beginning with *Lopez*'s first inquiry, we cannot conclude beyond reasonable doubt that a jury would have found true beyond a reasonable doubt all the aggravating factors the court relied on in selecting the upper term for count one.  As our Supreme Court explained in *People v. Sandoval* (2007) 41 Cal.4th 825, 840, superseded by statute on another ground as stated in *People v. Lewis* (2023) 88 Cal.App.5th 1125, 1132, "to the extent a potential aggravating circumstance at issue in a particular case rests on a somewhat vague or subjective standard, it may be difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the

---

the Sixth Amendment analysis" applied by our high court in *People v. Black* (2007) 41 Cal.4th 799 (*Falcon, supra*, 92 Cal.App.5th at pp. 920, 938–939), which held that a defendant's right to jury trial is not violated "so long as a single aggravating circumstance that renders [the] defendant eligible for the upper term sentence has been established in accordance with the requirements of *Apprendi* [*v. New Jersey* (2000) 530 U.S. 466] and its progeny" (*People v. Black*, at p. 812).  In contrast, *Lopez* held that because amended section 1170 requires that every factor on which the court relied in imposing an upper term have been admitted by the defendant or proven to a jury, the first step of the prejudice analysis focuses on determining whether a jury would have found true *all* the circumstances relied on by the trial court. (*Lopez, supra*, 78 Cal.App.5th at pp. 465–466.)  The *Lopez* court acknowledged that a "trial court may still rely on any single permissible aggravating factor to select an upper term sentence under the newly revised triad system," but if the reviewing court determines a jury would have found true only some of the aggravating factors relied on by the trial court, the relevant question is whether the reviewing court "can be assured that the trial court *would have exercised its discretion to impose the upper term*" even if it had realized that other factors on which it relied could not be considered under the amendments effected by Senate Bill No. 567.  (*Lopez,* at pp. 466–467 & fn. 10.)  We find *Lopez*'s reasoning on this point persuasive.  In any event, remand would still be required under the *Falcon* test, which requires at the second step a clear indication that the court would have imposed the upper term based solely on the proper aggravating circumstances.  (*Falcon*, at pp. 955–956.)

14

trial court." Three of the four crime-based factors the trial court relied on in this case—the crime involved "great violence," the victim was "particularly vulnerable," and the crime involved "planning" and "sophistication"—require "a subjective assessment of the circumstances rather than a straightforward finding of facts." (*Sandoval*, at p. 840; see *People v. Ross, supra*, 86 Cal.App.5th at p. 1355 [whether victim was "*particularly* vulnerable" or crime involved acts disclosing "a *high degree* of cruelty, viciousness, or callousness" would require court to speculate that jury would have reached same conclusion as sentencing court].) Additionally, the aggravating factors cannot be based on Simmons' use of a gun since that fact is the basis for an enhancement in this case. (§ 1170, subd. (b)(5); see *People v. Calhoun* (1981) 125 Cal.App.3d 731, 734; *People v. Price* (1984) 151 Cal.App.3d 803, 814.) Therefore, there is a reasonable probability the jury would not have found most of, if not all, the crime-based aggravating factors true beyond a reasonable doubt.

We turn to Lopez's second inquiry, which asks whether the trial court would have exercised its discretion to impose the upper term based solely on the permissible aggravating factors. (See *Lopez, supra*, 78 Cal.App.5th at p. 467.) " 'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) Remand is therefore required "unless the record reveals a clear indication that the trial court would not have reduced the sentence even if at the time of sentencing it had the discretion to do so." (*People v. Almanza* (2018) 24 Cal.App.5th 1104, 1110.)

Here, the record does not clearly indicate the trial court would have exercised its discretion to impose an upper term based only on the aggravating factors related to Simmons' prior convictions, especially

15

considering that the court relied on several crime-based aggravating factors. The court did not expressly weigh the aggravating factors or offer any other indication that it would have selected an upper term even if it could only rely on a few of the aggravating factors. And while the court found no mitigating factors, we cannot say there is no reasonable probability the court would have imposed a different sentence if it had been aware that it could not properly rely on all the aggravating circumstances it cited and that there was a presumption in favor of the middle term. Accordingly, resentencing is required.

Further, Simmons has pointed to the potential application of section 1170, subdivision (b)(6)(A). Since neither Simmons nor the court had a meaningful incentive to assess whether psychological or physical trauma was a "contributing factor" to his crime (see *People v. Gerson* (2022) 80 Cal.App.5th 1067, 1096; *People v. Banner* (2022) 77 Cal.App.5th 226, 242), the trial court should consider section 1170, subdivision (b)(6)(A) on remand in exercising its sentencing discretion.

## III.   Section 667, subdivision (a) enhancement

Effective January 1, 2019, Senate Bill No. 1393 (2017–2018 Reg. Sess.) amended section 667, subdivision (a) to give courts discretion to dismiss or strike a prior serious felony allegation. (§ 667, subd. (a), as amended by Stats. 2018, ch. 1013, § 1.)

Simmons contends the trial court, in imposing a five-year term under section 667, subdivision (a), misunderstood the scope of its discretion under the amended section 667 to strike the prior serious felony allegation. The court's misunderstanding is allegedly evidenced by its comment at the sentencing hearing that it was "obliged" to impose a five-year term under that section. In response, the People contend Simmons is misreading the

16

record.  According to the People, viewing the court's comment in context of the entire sentencing transcript "illustrates that the court fully appreciated its discretion."

Because we have already determined that the sentence must be reversed and remanded for resentencing on other grounds, we need not address this claim.  (See *People v. Jones* (2022) 79 Cal.App.5th 37, 46.)  On remand, the parties may advance whatever arguments they wish regarding sentencing for the enhancements.

### DISPOSITION

The matter is remanded for resentencing in light of section 1170, subdivision (b), as amended by Senate Bill No. 567.  In all other respects, the judgment is affirmed.

_____

Petrou, J.

WE CONCUR:

_____

Fujisaki, Acting P.J.

_____

Rodríguez, J.

A163574/*People v. Simmons*