Filed 11/25/24  P. v. Bello CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D082646 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD293899) |
| ALEX JOSHUA BELLO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Runston G. Maino, Judge.  Affirmed.

Lindsey M. Ball, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

After Sebastian S. vandalized Alex Joshua Bello's car, Bello—with whom Sebastian had a quarrelsome relationship—fired gunshots at Sebastian and his occupied car.  A jury convicted Bello of multiple counts,

including, as relevant here, shooting at an occupied vehicle (Pen. Code, § 246; count 1) and assault with a firearm (§ 245, subd. (a)(2); count 2), along with an enhancement for personal use of a firearm (§ 12022.5(a)). The court sentenced Bello to an aggregate prison term of seven years and eight months.

On appeal, Bello claims these convictions must be reversed because the trial court admitted improper character evidence that, two days before the shooting, Bello brandished a firearm at Sebastian. Alternatively, he claims the trial court abused its discretion as the evidence was unduly prejudicial under Evidence Code section 352.

We conclude the evidence was properly admitted as probative of motive and thus identity because it gave the jury helpful context about the relationship between Bello and Sebastian that supported Sebastian's claim he heard and saw Bello at the scene. Nor did the trial court abuse its wide discretion under section 352 when it found the probative value not substantially outweighed by any danger of undue prejudice. As the court did not err in admitting the evidence, we affirm the judgment.

I.

A.

In 2021, Bello and Sebastian were in a dating relationship, but they had a falling out when Bello stole from Sebastian. Bello stopped responding to Sebastian's text messages.

Three to four months later, Sebastian saw Bello in their neighborhood. Sebastian tried to talk to Bello, but Bello jumped in his car and drove off.

Later that day, Sebastian saw Bello again while driving. Sebastian tried to talk to him, but Bello again drove off. Sebastian followed Bello and blocked Bello's car with his own. Bello swore and yelled at Sebastian "to get out of the way" before pulling out a handgun and pointing it at him.

2

Sebastian did not think the gun was real, and he continued to press Bello to talk with him. Although Bello offered to converse if Sebastian moved his car, he instead drove off.

## B.

Late at night two days later, Sebastian was driving his then-partner's car with his partner in the passenger seat when he saw a parked car he recognized as Bello's. Drunk and feeling angry about the theft, Sebastian "ripped a board off of [a] fence" and "smash[ed Bello's] windshield in" while his partner stayed in the car.

Sebastian "heard somebody yell something coming around the corner." The voice sounded like Bello's. Sebastian looked up and saw Bello running to his car. Sebastian "heard loud pops" he recognized as gunshots and ran to his partner's car to drive away, although he totaled the car by driving into a post. Bello drove off. Officers collected surveillance footage from a nearby store that partially showed the incident but not the shooter, and the video was played for the jury.

Two nearby residents called 9-1-1. One caller "heard the gunfire," "heard a car kind of peeling out," and described a car matching Bello's leave the scene. He also heard someone say the name of the driver of the car and repeated it to the dispatcher: Alex Bello.

## II.

Bello contends the evidence he brandished a gun at Sebastian two days before the shooting was improper character evidence inadmissible for any relevant, disputed issue, including (1) absence of mistake or knowledge, (2) motive or intent, (3) common plan or design, or (4) identity. Even if admissible, Bello claims the court abused its discretion because the probative value was significantly outweighed by the danger of undue prejudice. Yet we

3

agree with the People (1) the evidence was properly admitted as probative of Bello's motive and thus his identity as the shooter and (2) undue prejudice did not substantially outweigh that relevance. The court therefore did not abuse its discretion in admitting it.

A.

Evidence of a person's character is generally inadmissible to prove the person's propensity to commit a crime, but such evidence is admissible "when relevant to prove some [other] fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, [or] absence of mistake or accident)." (§ 1101(b).) Even so, a court may exclude relevant evidence "if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice." (§ 352.) Prejudice "is not synonymous with 'damaging,' but refers instead to evidence that uniquely tends to evoke an emotional bias against [a] defendant without regard to its relevance on material issues." (*People v. Kipp* (2001) 26 Cal.4th 1100, 1121 [cleaned up].)

"We review a trial court's decision to admit evidence under Evidence Code sections 1101 and 352 for abuse of discretion." (*People v. Thomas* (2023) 14 Cal.5th 327, 358.) It is the defendant's burden to show "the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 390 [cleaned up].)

B.

As relevant here, before trial, the People sought to admit, and Bello moved to exclude, the evidence of Bello brandishing a gun at Sebastian. Bello claimed the evidence was inadmissible under both sections 1101 and 352.

4

Although the court excluded under section 352 evidence of a years-old brandishing involving Bello and third parties, it admitted the evidence of the gun brandishing involving Sebastian as "directly pertinent to the relationship between the defendant and the alleged victim."

The People's theory of the case was that "vandalizing a car does not merit being shot at," and Bello had such an outsize reaction because he recognized Sebastian, with whom he "ha[d] bad blood," as the vandal and thus shot at him. Bello's defense was that the many unknowns gave rise to reasonable doubt—the identity and number of shooters were unknown, there was no confirmation the car Sebastian vandalized was Bello's, and "[t]here's been no evidence showing any link with" Bello.

C.

We agree with the People that the evidence Bello brandished a gun at Sebastian was admissible under section 1101(b) to show Bello had a motive to shoot at Sebastian and therefore was the shooter.

"Other crimes evidence is admissible to establish two different types or categories of motive evidence." (*People v. Spector* (2011) 194 Cal.App.4th 1335, 1381.) Relevant here, the prior act can show, while not itself providing, the motive for the charged act. (*Ibid*.) "Evidence showing jealousy, quarrels, antagonism or enmity between an accused and the victim of a violent offense is proof of motive to commit the offense." (*People v. Daniels* (1971) 16 Cal.App.3d 36, 46.) "Likewise, evidence of threats of violence by an accused against the victim of an offense of violence is proof of the identity of the offender." (*Ibid*.) For example, in *People v. Zack* (1986) 184 Cal.App.3d 409, 413-414, the court of appeal concluded the trial court properly allowed evidence of the defendant's prior assaults upon the decedent to establish their tumultuous relationship and support the inference he killed her.

5

To the extent Bello argues in his reply brief that case law on this type of motive evidence is limited to prior acts of domestic violence and has been codified in section 1109, we conclude otherwise. Courts have allowed evidence of prior acts beyond domestic violence to demonstrate motive in this way. In *People v. Thompson* (2016) 1 Cal.5th 1043, 1114-1116, for instance, our Supreme Court determined evidence of a killer's prior financial crimes was admissible to show she had a financial motive to engage in a murder-for-hire conspiracy to kill her husband—namely, to obtain life insurance proceeds.

Bello claims the brandishing incident was inadmissible "because the nature of the relationship between appellant and the victim, in addition to appellant's motives, were not facts genuinely in dispute." But "[w]hen a defendant pleads not guilty, he or she places all issues in dispute, and thus the perpetrator's identity, intent and motive are all material facts." (*People v. Walker* (2006) 139 Cal.App.4th 782, 796.) This is particularly true here, where Bello's defense was to sow doubt as to his identity as the shooter. Bello further suggests the vandalism alone provided motive, so "at best" the brandishing evidence was "cumulative." But as the People argued below, shooting at the perpetrator is an extreme reaction to vandalism. Evidence of the sour relationship between Bello and Sebastian helped explain to the jury why Bello may have reacted in this manner. Contrary to Bello's claim, it was therefore neither "superfluous" nor "cumulative."

Bello also claims the evidence was inadmissible to establish identity under section 1101 "because it lacked distinct signatory value." But here, the inference of identity follows the evidence of motive, and "the probativeness of other-crimes evidence on the issue of motive does not necessarily depend on similarities between the charged and uncharged crimes, so long as the

6

offenses have a direct logical nexus." (*People v. Demetrulias* (2006) 39 Cal.4th 1, 15.) At any rate, "the common mark of the identical perpetrator and identical victim in both the charged and uncharged offenses is so distinctive that it adds persuasive support to the inference that defendant and not some other person was the perpetrator of both offenses." (*People v. Beamon* (1973) 8 Cal.3d 625, 633.) Even if, as Bello claims, "the only commonality between the charged and uncharged offenses is the presence of an alleged firearm . . . and the same parties," we conclude on this record those links are sufficient to admit the evidence.

For the first time in reply, Bello claims the brandishing evidence lacked relevance because "the jury needed to find the preliminary fact that [Bello] had sufficient opportunity to recognize that the individual in the dark alley was [Sebastian], and not a stranger, in order to conclude that he harbored the same motive as he had in interacting with the victim two days before." Bello relies on *People v. Lucas* (1995) 12 Cal.4th 415, but *Lucas* concerns section 403, which relates to the determination of preliminary facts rather than character evidence. (*Lucas*, at pp. 465-468.) There is no indication Bello ever asked for a section 403 hearing on the other acts evidence, and "a trial court is not required in all cases to conduct" one. (*Bryant, Smith and Wheeler*, 60 Cal.4th at p. 371 [cleaned up].) Bello thus forfeited this argument. (*Ibid.*)

As we conclude the trial court did not abuse its discretion in finding the evidence potentially admissible to prove motive and therefore identity, we need not reach the other section 1101(b) grounds Bello raises.

## D.

We further conclude the trial court did not abuse its discretion in refusing to exclude the evidence under section 352. Factors relevant to the

degree of an uncharged act's probative value include the similarity between the acts, the independence of the sources of the evidence of the acts, and the time between the acts. (*People v. Zepeda* (2001) 87 Cal.App.4th 1183, 1211.) Factors relevant to prejudice include whether the defendant was convicted of the uncharged act and whether the evidence of the uncharged act was stronger or more inflammatory. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 405.)

As the People note, only two days separated the brandishing from the shooting. Further, there were similarities between the two—particularly that the offenses involved the same parties. While Bello claims the prior brandishing evidence was "inflammatory" and argues "it tended to persuade the jury to convict [Bello] based on a prejudgment about his disposition as a person . . . with a character for violence," we agree with the People that the brandishing was *less* inflammatory than the shooting Bello was charged with.

As to the independence of the sources of the evidence, Bello, citing *People v. Stanley* (1967) 67 Cal.2d 812, 817, claims Sebastian "was not a reliable witness" and thus his "uncorroborated claims" about the brandishing were unhelpful to the jury. "The decision in *Stanley*, however, expressly declined 'to adopt rigid rules' regarding the admission of such evidence," instead noting the importance of balancing probative value against prejudice. (*Ewoldt*, 7 Cal.4th at p. 407, quoting *Stanley*, at p. 818.) "[U]ncorroborated testimony by the complaining witness concerning the defendant's uncharged misconduct may have less probative value than testimony that is corroborated or testimony provided by a third party," but such evidence nonetheless can pass section 352 muster. (*Ibid*.) The credibility of witness testimony and the weight to assign to it are issues for the jury to decide. (*People v. Stewart* (2000) 77 Cal.App.4th 785, 790.) That one juror indicated

8

in a note that he or she found Sebastian not credible is not dispositive of the section 352 analysis.

Weighing the relevant considerations, we disagree that the brandishing evidence was "so generic on the issues of motive and intent . . . that it offers only minimal probative value, if any." Instead, we conclude the evidence had significant and noncumulative probative value to show Bello and Sebastian's troubled relationship, which provided a motive for Bello to shoot at Sebastian and thus bolstered Bello's identity as the shooter. We further conclude the probative value was not significantly outweighed by the danger of undue prejudice. Accordingly, the court did not abuse its discretion under section 352 in admitting the evidence.

III.

We affirm.

CASTILLO, J.

WE CONCUR:


McCONNELL, P. J.


O'ROURKE, J.

9