Filed 3/13/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MILO WILLIAM ANDERSON,<br><br>    Defendant and Appellant. | H051905<br>(Santa Clara County<br>Super. Ct. No. C2016556) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>EDWARD LEE ALLEN, JR.,<br><br>    Defendant and Appellant. | H051906<br>(Santa Clara County<br>Super. Ct. No. C2016556) |

A group of men including defendants Milo William Anderson and Edward Lee Allen, Jr. robbed Jacob Cabral at gunpoint in the garage of his San Jose home. A member of the group, Tyrone Lampley, was found dead near the home after the robbery. Police searched Lampley's phone after obtaining consent from Lampley's mother and found text messages implicating Allen in the robbery, which then led to the discovery of additional evidence.

After the trial court denied a defense motion to suppress evidence found on Lampley's phone, Anderson pleaded no contest to second degree robbery and Allen pleaded no contest to first degree residential burglary, with each admitting firearm and

prior strike allegations.  The court sentenced Anderson to three years in prison and Allen to four years.

In this consolidated appeal, Anderson and Allen contend the evidence from Lampley's phone should have been suppressed because law enforcement violated the California Electronic Communications Privacy Act (CalECPA) (Pen. Code, § 1546 et seq.)[1] in searching the phone without obtaining a warrant.  We conclude suppression of this evidence was not required, and we will affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Cabral lived at a home in San Jose with family members and his girlfriend.  Cabral grew marijuana in his backyard, hung the leaves in his garage, and would frequently have people over to the garage to smoke marijuana.  A later search of Cabral's garage found items including marijuana, marijuana packaging, scales, grinders, and ammunition.  A search of Cabral's backyard found 27 marijuana plants.

Cabral would leave the side door to the garage unlocked.  On the night of the charged offenses, Cabral was in the garage with two other people.  Cabral testified at a preliminary hearing that he was playing video games and the other two people were smoking marijuana when two masked people came to the garage's side door and "laid [him] down."  Cabral testified that both men were armed with handguns and they remained in the garage for about a minute as Cabral laid on the ground not able to see much of the men.  Cabral testified that he kept about $40,000 in cash inside the garage's walls and after the men left, he noticed $20,000 was missing.

Cabral's neighbors heard gunshots after the robbery, and a man fell to the ground in a yard near Cabral's home.  Law enforcement later found Lampley's body lying on the ground.  Law enforcement found a cell phone in Lampley's pocket, and a gun and a bag

---

[1] Unspecified statutory references are to the Penal Code.

2

of marijuana with the body. Lampley was believed to have participated in the robbery of Cabral's garage.

A police officer notified Lampley's mother of Lampley's death. Lampley's mother provided Lampley's phone number and consented to police searching the contents of the phone found in Lampley's pocket. At the preliminary hearing, the police officer testified that Lampley's mother was Lampley's "next of kin."

One week after Lampley's death, police undertook a data extraction of the phone and found messages implicating Allen. Police then obtained a warrant for Lampley's call detail records and the records of other suspected robbery participants, finding calls between the suspected participants leading up to the charged offenses.

About a week after Lampley's body was discovered and Lampley's mother consented to the search of the phone, law enforcement released Lampley's vehicle keys and key fob to Lampley's mother.

Before the preliminary hearing, Anderson moved pursuant to section 1538.5 to suppress all evidence relating to the search of the phone found in Lampley's pocket. The motion asserted law enforcement violated CalECPA and suppression was required to remedy the violation. Allen joined Anderson's motion. The magistrate denied the motion without elaboration and held Anderson, Allen, and a codefendant to answer.

Anderson then moved the trial court to dismiss the attempted murder charge against him under section 995 and to suppress evidence obtained from Lampley's phone, renewing his earlier suppression motion. Anderson asserted the prosecution presented insufficient proof that Lampley's mother was an authorized possessor of the phone pursuant to CalECPA, and the CalECPA violation required suppression of the evidence from the phone. The prosecution opposed the motion, contending the consent from Lampley's mother was valid and even if law enforcement violated CalECPA, suppression was not required.

After argument at which Allen joined in Anderson's motion and after supplemental briefing, the trial court denied the defense's motion. The trial court found Lampley's mother was the authorized possessor of the phone, citing "circumstantial evidence" indicating Lampley's mother "was given control and custody of certain property after Mr. Lampley expired." The court stated it was reasonable for law enforcement to believe Lampley's mother was an authorized possessor of the phone because the phone "is property that would normally transmit to her." Thus, the trial court found the magistrate properly denied the defense's section 1538.5 motion at the preliminary hearing.

Anderson and Allen each then entered pleas pursuant to plea agreements. Anderson pleaded no contest to one count of second degree robbery (§§ 211, 212.5, subd. (c)) and admitted allegations that he was armed with a handgun (§ 12022, subd. (a)(1)) and he had sustained a prior strike conviction (§§ 667.5, subd. (c), 1192.7, subd. (c)). Allen pleaded no contest to one count of first degree residential burglary (§§ 459, 460, subd. (a)), also admitting handgun and prior strike enhancements (§§ 12022, subd. (a)(1), 667.5, subd. (c), 1192, subd. (c)). The trial court sentenced Anderson to prison for three years and imposed a four-year prison term upon Allen.

These appeals timely followed.[2]

---

[2] This court ordered the appeals by Anderson and Allen considered together for purposes of oral argument and disposition. Neither Anderson nor Allen obtained a certificate of probable cause in conjunction with their notices of appeal. However, under CalECPA, a motion to suppress electronic information "shall be made, determined, and be subject to review in accordance with the procedures set forth in subdivisions (b) to (q), inclusive, of Section 1538.5." (§ 1546.4, subd. (a).) Under section 1538.5, subdivision (m), "[a] defendant may seek further review of the validity of a search or seizure on appeal from a conviction in a criminal case notwithstanding the fact that the judgment of conviction is predicated upon a plea of guilty." "[I]ssues relating to the validity of a search and seizure, for which an appeal is provided under section 1538.5, subdivision (m)" may be raised on appeal following a no contest plea without a certificate of probable cause. (*People v. Buttram* (2003) 30 Cal.4th 773, 780.)

4

## II. DISCUSSION

Anderson and Allen both assert the search of Lampley's phone violated CalECPA and thus the trial court erred in denying the defense's motion to suppress evidence found on the phone. Both defendants argue the evidence did not demonstrate Lampley's mother was an authorized possessor of the phone as defined in CalECPA, the good faith exception does not excuse the warrantless search, and suppression of the evidence obtained from the phone is required.

The Attorney General responds that law enforcement did not violate CalECPA because they reasonably believed Lampley's mother was the authorized possessor of the phone. The Attorney General further asserts that even if the search violated CalECPA, the good faith exception to the exclusionary rule applies and thus suppression is not required.

We conclude that even assuming law enforcement violated CalECPA by searching the phone pursuant to Lampley's mother's consent, the good faith exception to the exclusionary rule applies. Therefore, the trial court did not err in denying the defense's suppression motion, and we will affirm the judgments.

### A. *Legal Principles and Standard of Review*

Effective January 1, 2016, CalECPA states a government entity shall not "[a]ccess electronic device information by means of physical interaction or electronic communication with the electronic device." (§ 1546.1, subd. (a)(3).) A government entity may access electronic device information by means of physical interaction or electronic communication with the device only in listed situations, including "[p]ursuant to a warrant" (*id.*, subd. (c)(1)) and "[w]ith the specific consent of the authorized possessor of the device" (*id.*, subd. (c)(4)). "Any person in a trial, hearing, or proceeding may move to suppress any electronic information obtained or retained in violation of the Fourth Amendment to the United States Constitution or of this chapter. The motion shall

5

be made, determined, and be subject to review in accordance with the procedures set forth in subdivisions (b) to (q), inclusive, of Section 1538.5." (§ 1546.4, subd. (a).)

"Prior to the passage of CalECPA, California law did not require law enforcement officials to obtain a warrant to access most electronic information. Proponents of CalECPA sought to update the law for 'the digital age' and 'properly safeguard the robust constitutional privacy and free speech rights of Californians, spur innovation, and support public safety by instituting clear warrant standards for government access to electronic information.' [Citations.]" (*People v. Meza* (2023) 90 Cal.App.5th 520, 545, fn. 15 (*Meza*).)

"[A] defendant moving pursuant to Penal Code section 1538.5 to suppress evidence obtained as the result of a warrantless search must set forth the factual and legal bases for the motion by making a prima facie showing that law enforcement authorities acted without a warrant. [Citation.] A defendant's moving papers, however, need not anticipate the prosecution's justifications for the warrantless search or seizure, because '[l]aw enforcement personnel, not defendants, are in the best position to know what justification, if any, they had for proceeding without a warrant.' [Citation.] Accordingly, the burden of proving the justification for the warrantless search or seizure lies squarely with the prosecution. [Citations.]" (*People v. Johnson* (2006) 38 Cal.4th 717, 723.)

"At a preliminary hearing on a felony complaint, the defendant may move to suppress evidence that the defendant claims was obtained as a result of an invalid search or seizure. [Citation.] If the motion is denied and the defendant is held to answer, the defendant may renew the suppression motion in the superior court under the standards governing a section 995 motion. [Citation.] In a section 995 proceeding, the superior court 'merely reviews' the evidence presented at the preliminary hearing; it does not substitute its judgment on the weight of the evidence or resolve conflicts in the evidence. [Citation.] The role of the superior court ' " 'is similar to that of an appellate court reviewing the sufficiency of the evidence to sustain a judgment and involves the

6

determination of a legal issue only.' " ' [Citation.]" (*Price v. Superior Court* (2023) 93 Cal.App.5th 13, 34, fn. omitted (*Price*).)

"In reviewing a section 995 order, itself reviewing a magistrate's order denying a suppression motion at a preliminary hearing, ' "we, in effect, review the magistrate's decision directly, deferring to the magistrate's factual findings." ' [Citation.] ' "We must draw all presumptions in favor of the magistrate's factual determinations, and we must uphold the magistrate's express or implied findings if they are supported by substantial evidence." ' [Citation.] But, like the superior court, we independently determine whether the search or seizure was reasonable. [Citations.] That is, ' "[w]e judge the legality of the search by 'measur[ing] the facts, as found by the trier, against the constitutional standard of reasonableness.' " ' [Citation.]" (*Price*, *supra*, 93 Cal.App.5th at p. 34.)

## B. *Analysis*

Although Anderson and Allen assert that Lampley's mother did not qualify as an authorized possessor of Lampley's phone under CalECPA, we need not decide the issue because law enforcement had a good faith belief Lampley's mother could consent to the phone's search. Thus, suppression of the evidence is not required.[3]

### 1. *The good faith exception to the exclusionary rule applies to searches under CalECPA.*

CalECPA "does not require the suppression of any electronic information. Rather, it *authorizes* any person in a trial, hearing, or proceeding to *move to suppress* any

---

[3] "Federal law provides that Fourth Amendment rights are personal and may not be vicariously asserted." (*In re Rudy F.* (2004) 117 Cal.App.4th 1124, 1131.) Conversely, CalECPA provides that "[a]ny person" may move to suppress evidence obtained in violation of the Fourth Amendment or the act. (§ 1546.4, subd. (a).) Based on this statutory provision, the prosecutor acknowledged in motions practice that Anderson and Allen had standing to challenge the search of Lampley's phone. The Attorney General does not argue here that Anderson and Allen lack standing under CalECPA to challenge the search based on the fact the phone did not belong to them.

electronic information obtained or retained in violation of the Fourth Amendment or CalECPA." (*Price*, *supra*, 93 Cal.App.5th at p. 58.) Thus, the Court of Appeal in *Price* concluded the good faith exception applicable to the Fourth Amendment exclusionary rule also applies to CalECPA violations. (*Price*, *supra*, at p. 60.) (Cf. *People v. Clymer* (2024) 107 Cal.App.5th 140 (*Clymer*) [citing *Price* in stating the good faith exception "arguably" applies to CalECPA violations]; *Meza*, *supra*, 90 Cal.App.5th at p. 546, fn. 17 [declining to address the issue]; *id.* at p. 547b (statement by Liu, J., dissenting from denial of review) ["It is not clear whether [the good faith] exception applies to violations of CalECPA, and there are plausible arguments on both sides of the question"].)

In addition, the Court of Appeal in *People v. Campos* (2024) 98 Cal.App.5th 1281, 1295 (*Campos*) concluded CalECPA does not require suppression of evidence for all violations of the statute, though the court did not specifically address the good faith exception. The court in *Campos* noted both CalECPA's legislative history and the statute's statement that suppression motions are to be reviewed in accordance with section 1538.5. (*Campos*, *supra*, at p. 1295.) Section 1538.5 "does not establish or alter any substantive ground for suppression of evidence or return of property." (§ 1538.5, subd. (n).) Thus, the *Campos* court concluded that evidence is not automatically excluded when it was obtained in violation of CalECPA. (*Campos*, *supra*, at pp. 1296-1298.) The court in *Price* cited a similar rationale, reviewing several CalECPA provisions to conclude that "[n]one of these provisions direct a court to impose a particular remedy for a CalECPA violation; they leave the determination of the appropriate remedy to the court considering the suppression motion, civil action, or petition alleging the CalECPA violation." (*Price*, *supra*, 93 Cal.App.5th at p. 59.)

We find *Price* well reasoned. We agree CalECPA does not require suppression of all evidence obtained in violation of the act. Instead, the good faith exception to the Fourth Amendment exclusionary rule applies to CalECPA violations. As the Court of Appeal in *Price* concluded, the language of CalECPA—which does not mention the good

8

faith exception one way or the other—does not show "that the Legislature intended such a sweeping change to this well-established exception without express clarity." (*Price*, *supra*, 93 Cal.App.5th at p. 59.) "The Legislature is presumed to know existing law, including case law [citation], and nothing in CalECPA suggests that the legislation was intended to vitiate' " case law establishing the good faith exception in the Fourth Amendment context. (*Price*, *supra*, at p. 60.)

Legislative history supports our conclusion. As the court in *Campos* observed, when CalECPA legislation was first introduced, section 1546.4, subdivision (a) would have provided that " 'no evidence obtained or retained in violation of this chapter shall be admissible in a criminal . . . proceeding . . . .' ' (Sen. Bill No. 178 (2015-2016 Reg. Sess.) as introduced Feb. 9, 2015.)" (*Campos*, *supra*, 98 Cal.App.5th at p. 1295.) "According to a report from the Assembly Committee on Public Safety, the California State Sheriffs' Association opposed the bill on multiple grounds, including the following: ' "[W]e are concerned about the breadth of the exclusionary provisions of proposed section 1546.4. Whether evidence should be admitted or not should be based on a motion to suppress under . . . section 1538.5 and should be based on violations of the Fourth Amendment. Technical violations of the 'chapter' that do not implicate a person's right to privacy should not result in the suppression of evidence." ' (Assem. Com. on Public Safety, Rep. on Sen. Bill No. 178 (2015-2016 Reg. Sess.) as amended July 7, 2015, p. 12.)" (*Id.* at p. 1296.) The Legislature removed the language in section 1546.4 requiring suppression of all evidence obtained in violation of CalECPA and substituted language stating that a motion to suppress shall be made, determined, and subject to review under section 1538.5, evincing "a rejection of the proposal to exclude *all* evidence obtained in violation of the CalECPA." (*Campos*, *supra*, at p. 1296.) The court in *Clymer* cited the same legislative history in concluding it "arguably suggests" the good faith exception remains operative under CalECPA. (*Clymer*, *supra*, 107 Cal.App.5th at p. 140.)

9

Our review of the legislative history similarly supports the conclusion that CalECPA does not require suppression for any violation of the act, and the good faith exception to the exclusionary rule remains operative under CalECPA. Anderson and Allen point to nothing in the act's legislative history to indicate a contrary conclusion.

Anderson and Allen argue the principles for suppressing evidence obtained in violation of wiretap laws should apply to CalECPA violations. In support of this argument, they cite *People v. Jackson* (2005) 129 Cal.App.4th 129 (*Jackson*), which concluded evidence obtained under federal or state wiretap laws cannot be admitted under the good faith exception applicable to the exclusionary rule for Fourth Amendment violations. (*Jackson*, *supra*, at pp. 153-154.) We conclude *Jackson* does not support their argument.

In *Jackson*, the Court of Appeal held the good faith exception "does not apply to a motion to suppress unlawfully obtained wiretap evidence" where the wiretap evidence was unlawfully obtained by failure to identify any targets of the wiretaps. (*Jackson*, *supra*, 129 Cal.App.4th at p. 136.) The reviewing court stated that while the Fourth Amendment good faith exception is a judicially crafted exception to the judicially created exclusionary rule, suppression under the federal wiretap law is statutorily mandated. (*Id.* at p. 153.) Citing United States Supreme Court precedent that the exclusionary rule does not apply to federal wiretap violations, the Court of Appeal stated: "If suppression of wiretap evidence 'does not turn on the judicially fashioned exclusionary rule' we fail to see how it can turn on a judicially fashioned exception to the judicially fashioned exclusionary rule." (*Ibid.*)

The reasons the Court of Appeal enunciated in *Jackson* to support this position do not apply here. The court in *Jackson* stated the California wiretap law authorized "a good faith defense to a criminal or civil action for violation of the statute but not to a motion to suppress unlawfully obtained evidence," demonstrating the Legislature was aware of the good faith exception "and deliberately chose not to incorporate a good faith exception

10

into the statutory exclusionary rule." (*Jackson*, *supra*, 129 Cal.App.4th at p. 154.) No such good faith defense to a criminal or civil action is specified in CalECPA. The *Jackson* court noted that the United States Supreme Court had not yet recognized the good faith exception to the exclusionary rule at the time the federal wiretap statute was enacted, and thus Congress could not have contemplated such an exception. (*Jackson*, *supra*, at p. 155.) Here, the good faith exception was embedded in Fourth Amendment jurisprudence well before CalECPA's enactment. The court in *Jackson* expressed concern that "nonconstitutional violations of the wiretap statute would be more likely to lead to the suppression of evidence than constitutional violations." (*Jackson*, *supra*, at p. 155.) Anderson and Allen have articulated no such concern regarding CalECPA violations.

Finally, the *Jackson* court stated the United States Supreme Court adopted the good faith exception because "if the search warrant procedure was defective, it is not the police officer who is to blame," but the magistrate who signed the warrant. (*Jackson*, *supra*, 129 Cal.App.4th at p. 158.) In contrast, the *Jackson* court stated, "the procedure for obtaining a wiretap order shows Congress was not satisfied it could fully trust a magistrate with the far-reaching invasion of privacy possible through a wiretap," instead requiring the person seeking the order to first obtain the personal approval for the wiretap from the United States Attorney General or a statutorily authorized designee. (*Id.* at p. 159.) In this situation, the Court of Appeal stated, "the government cannot place the blame on the magistrate who issued the order." (*Id.* at pp. 159-160.) This rationale does not apply in the instant situation, where CalECPA provides for no such special approval process for searches comparable to that in wiretap statutes. *Jackson*, which was based on the language, purpose, and procedures of wiretap statutes rather than CalECPA, does not control here.

Therefore, consistent with *Price*, we conclude that the good faith exception to the exclusionary rule applies to searches challenged under CalECPA.

11

## 2. *Law enforcement acted in good faith by relying on the consent of Lampley's mother to search the phone.*

We review the application of the good faith exception de novo, examining whether a reasonably well-trained officer would have known the search was illegal despite the consent obtained. (See *Price*, *supra*, 93 Cal.App.5th at p. 50.) " '[T]he government has the burden to prove facts warranting application of the good faith exception.' [Citation.]" (*Ibid.*)[4]

When the officer obtained Lampley's mother's consent to search the phone, he informed Lampley's mother that Lampley was deceased. Because Lampley had died, he was no longer the authorized possessor of the phone. At that point, law enforcement acted in objective good faith in believing Lampley's mother as Lampley's "next of kin" was an authorized possessor of the phone. Law enforcement understood Lampley's mother to be Lampley's "next of kin," and they later released other personal property of Lampley to Lampley's mother. Nothing in the appellate record indicates anyone else besides Lampley's mother had a stronger claim to possession of the phone. Any deterrence rationale does not support suppressing the evidence in situations where law enforcement reasonably believes a family member is the authorized possessor of a deceased person's electronic device. In addition, as the Attorney General notes, no case law existed concerning the definition of "authorized possessor" at the time law enforcement obtained consent to search the phone, and nothing in the statutory definition should have caused law enforcement to believe Lampley's mother was not authorized to consent to the phone's search. (See *Price*, *supra*, 93 Cal.App.5th at p. 51 [good faith exception applied because at the time a geofence warrant was issued, no published cases existed analyzing the constitutionality of such warrants].)

---

[4] The good faith exception generally applies to warrantless searches; in such a situation, "[t]he prosecution must establish by a preponderance of the evidence the facts justifying a warrantless search." (*People v. Smith* (2020) 46 Cal.App.5th 375, 382-383.)

12

The definition of "authorized possessor" in CalECPA—"the possessor of an electronic device when that person is the owner of the device or has been authorized to possess the device by the owner of the device"—does not state exactly who may consent to a search when the owner of an electronic device dies. (§ 1546, subd. (b).) The parties' briefs discuss *Clymer*, *supra*, 107 Cal.App.5th 131 to apply the definition to this situation. The Attorney General argues *Clymer* demonstrates Lampley's mother was an authorized possessor of the phone, while Anderson and Allen assert *Clymer* is distinguishable. While we need not decide whether Lampley's mother met the definition of an "authorized possessor" of the phone, we conclude *Clymer*—which was issued after the search of the phone in the instant case—supports the conclusion that law enforcement acted in objective good faith by relying on consent from Lampley's mother.

In *Clymer*, Drew McKay was found dead in his bedroom from an apparent drug overdose. (*Clymer*, *supra*, 107 Cal.App.5th at p. 135.) With the permission of McKay's parents, law enforcement searched McKay's room and found a cell phone and a tablet on a bedside table. (*Ibid.*) McKay's parents repeatedly urged law enforcement to search the devices to learn what happened to their son, and they provided the passcodes to the devices. (*Ibid.*) Law enforcement searched the devices and found messages implicating Clymer in selling oxycodone to McKay. (*Ibid.*) After the trial court partially denied Clymer's motion to suppress the evidence found on the devices, Clymer pleaded no contest to possession of diazepam for sale. (*Id.* at p. 136.)

On appeal, Clymer asserted the search of McKay's devices violated CalECPA and therefore the evidence found in the search should have been suppressed. (*Clymer*, *supra*, 107 Cal.App.5th at p. 136.) The Court of Appeal concluded McKay's parents were authorized possessors of the devices and could consent to the search. (*Id.* at p. 140.) The reviewing court noted McKay lived with his parents and "McKay, of course, was no longer the corporal owner or possessor of the devices" upon his death. (*Ibid.*) The Court of Appeal stated because McKay died in his bedroom in the family residence and the

13

devices were next to McKay's bed, "the only persons who then actually possessed, and could possess, the devices at the relevant time, were his parents." (*Ibid.*) The Court of Appeal added: "Furthermore, McKay's parents not only had uncontested physical possession of the devices at the relevant time, but they also knew the passcodes and therefore could access the devices. In short, on McKay's death, there were no 'authorized possessors' of the devices other than his parents. [Citation.]" (*Id.* at pp. 140-141.)

We acknowledge that some facts on which the Court of Appeal in *Clymer* relied are not present here, and thus we do not hold that Lampley's mother was necessarily an authorized possessor of the phone under CalECPA. The court in *Clymer* noted that McKay lived with his parents, the parents had the passcodes to McKay's devices, the devices were physically present in the family home, and McKay's parents repeatedly urged law enforcement to search the devices to learn what happened to their son. (*Clymer*, *supra*, 107 Cal.App.5th at pp. 140-141.) Those facts are generally absent here, though the record suggests Lampley may have lived with his mother.[5]

Nonetheless, *Clymer* supports the conclusion that law enforcement acted in good faith by relying on Lampley's mother's consent to search the phone. As in *Clymer*, "on [Lampley's] death, there were no 'authorized possessors' of the device[] other than his parent[]." (*Clymer*, *supra*, 107 Cal.App.5th at pp. 140-141.) An officer testified at the preliminary hearing that law enforcement released Lampley's vehicle keys and key fob to his mother after his death, and that he understood Lampley's mother to be Lampley's "next of kin." While no evidence at the preliminary hearing described the meaning of the term "next of kin," this testimony evinces law enforcement's understanding that

---

[5] At the preliminary examination, the prosecutor asked a police officer if he and another officer went "to Mr. Lampley's home in Menlo Park to notify his family?" The officer replied that he did so, speaking with Lampley's mother. The record provides no other information on this matter.

Lampley's mother was authorized to consent to the search of the phone as Lampley's next closest living family member. This understanding was reasonable, and neither Anderson nor Allen has suggested any other person who would be the authorized possessor of the phone after Lampley's death.

Moreover, *Clymer*'s holding did not rest just on facts indicating McKay lived in the family home and his parents had passcodes to the devices. The court in *Clymer* stated its holding was "wholly consistent with the fundamental purpose of CalECPA, which is to protect the privacy interests of owners and authorized users in their electronic devices and electronic information." (*Clymer*, *supra*, 107 Cal.App.5th at p. 141.) The court in *Clymer* stated: "McKay's privacy interest in his devices was extinguished upon his death. ' "It is well settled that the right of privacy is purely a personal one; it cannot be asserted by anyone other than the person whose privacy has been invaded . . . . [Citations.] Further, the right does not survive but dies with the person." ' [Citations.] Thus, we fail to see how the search of a decedent's electronic devices can be at odds with CalECPA, particularly where, as here, the persons who are properly in possession of the decedent's devices at the relevant time, as were McKay's parents, authorize a search of the devices and supply the passcodes to do so." (*Ibid.*)

Similar to *Clymer*, our conclusion that law enforcement acted in good faith by relying on Lampley's mother's consent is consistent with CalECPA's purpose. In enacting CalECPA, the Legislature sought to protect rights of privacy and speech, and to support public safety. (*Meza*, *supra*, 90 Cal.App.5th at p. 545, fn. 15.) Lampley's mother, believed to be his next closest living family member, provided the phone's number and consented to its search when she was notified of her son's death. Law enforcement was seeking information to investigate the robbery, but this situation also involved Lampley's apparent homicide. The holder of the privacy interest was deceased, and law enforcement could in good faith seek consent to see the contents of his phone

15

consistent with CalECPA's public safety purposes from the person who apparently was now authorized to possess it. (*Clymer*, *supra*, 107 Cal.App.5th at p. 141.)

Anderson and Allen cite *In re Scott K.* (1979) 24 Cal.3d 395 and *People v. Daniels* (1971) 16 Cal.App.3d 36 to argue parents generally do not have authority to consent to a search of their children's property. We do not find these cases to be of assistance in our analysis. In *Scott K.*, the California Supreme Court concluded that under the record before it, a father could not consent to a search of his son's toolbox, stating "[c]ommon authority over personal property may not be implied from the father's proprietary interest in the premises," and "[n]either may it be premised on the nature of the parent-child relation." (*Scott K.*, *supra*, at pp. 404-405, fn. omitted.) The Court of Appeal in *Daniels* upheld the denial of a motion to suppress where a mother consented to a search of her adult son's bedroom, though the reviewing court concluded that a search of a suitcase in the room was unlawful because the mother had "no actual control" over the suitcase and officers did not reasonably believe the mother had such control. (*Daniels*, *supra*, at pp. 44-45.) Both cases were fact driven, and considered theories of common authority or control of property. Of particular importance, neither *Scott K.* nor *Daniels* involved a parent authorizing access to the personal effects of a deceased child. Thus, *Scott K.* and *Daniels* do not persuade us that the good faith exception has no application here.

For these reasons, we conclude that even assuming Lampley's mother was not the authorized possessor of the phone as defined by CalECPA, the prosecution demonstrated that law enforcement had an objectively reasonable belief Lampley's mother could consent to the search, and officers acted in good faith by relying on her consent to search the phone. Thus, suppression of the evidence obtained from the phone was not required.

### III. DISPOSITION

The judgments are affirmed.

16

_____
            Greenwood, P. J.

WE CONCUR:

_____
Danner, J.

_____
Bromberg, J.

H051905 People v. Anderson

_____

Greenwood, P. J.

WE CONCUR:

_____

Danner, J.

_____

Bromberg, J.

H051906 People v. Allen

Trial Court:                          Santa Clara County Superior Court
                                      Superior Court No.: C2016556

Trial Judges:                         The Honorable Nona L. Klippen
                                      The Honorable Philip H. Pennypacker
                                      The Honorable Evette D. Pennypacker
                                      The Honorable Shelyna V. Brown


Attorney for Defendant and Appellant
MILO WILLIAM ANDERSON:                 Richard M. Oberto,
                                      under appointment by the Court of
                                      Appeal for Appellant




Attorneys for Plaintiff and Respondent
THE PEOPLE:                            Rob Bonta,
                                      Attorney General of California

                                      Charles C. Ragland,
                                      Chief Assistant Attorney General

                                      Jeffrey M. Laurence,
                                      Senior Assistant Attorney General

                                      Bridget Billeter,
                                      Supervising Deputy Attorney
                                      General

                                      Kelly A. Styger,
                                      Deputy Attorney General




H051905
People v. Anderson

Trial Court:                          Santa Clara County Superior Court
                                      Superior Court No.: C2016556


Trial Judges:                         The Honorable Nona L. Klippen
                                      The Honorable Eric S. Geffon

Attorney for Defendant and Appellant
EDWARD LEE ALLEN JR:                  Michelle D. Spencer,
                                      Lori A. Quick,
                                      under appointment by the Court of
                                      Appeal for Appellant



Attorneys for Plaintiff and Respondent
THE PEOPLE:                           Rob Bonta,
                                      Attorney General of California

                                      Charles C. Ragland,
                                      Chief Assistant Attorney General

                                      Jeffrey M. Laurence,
                                      Senior Assistant Attorney General

                                      Bridget Billeter,
                                      Supervising Deputy Attorney
                                      General

                                      Kelly A. Styger,
                                      Deputy Attorney General


H051906
People v. Allen